# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————————

No. 04-2023

———————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Daniel W. Savage, | * | |
| | * | |
| Appellant. | * | |

———————————

Submitted: November 15, 2004
Filed: July 18, 2005

———————————

Before RILEY, JOHN R. GIBSON and GRUENDER, Circuit Judges.

———————————

GRUENDER, Circuit Judge.

Daniel W. Savage ("Savage") pled guilty to possession with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). The district court[1] sentenced Savage to 168 months' imprisonment and 5 years' supervised release. Savage appeals his sentence on the grounds that the district court clearly erred in finding that he possessed a

———————————

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

firearm in connection with the drug offense to which he pled guilty under U.S. Sentencing Guidelines § 2D1.1(b)(1) and that he should be resentenced under advisory guidelines pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005). We affirm.

## A. BACKGROUND

After Savage entered his plea, the United States Probation Office prepared a presentence investigation report ("PSR") that recommended a two-level upward adjustment to Savage's base offense level for the specific offense characteristic of possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1). That enhancement was based on information provided by Grace Charles ("Charles"), who lived with Savage for about a month during the summer of 2002. Charles made statements to investigators that were incorporated into the PSR and testified at Savage's sentencing hearing.

At the sentencing hearing, Charles testified that while living with Savage, she saw him selling methamphetamine in his small apartment. She also saw him use a scale to measure methamphetamine for distribution. In addition, Charles twice observed a large firearm that "looked close to a shotgun" in Savage's apartment. Charles first saw the firearm leaning against the wall of Savage's bedroom closet. In the same bedroom, Charles witnessed Savage use a scale to weigh methamphetamine and sell methamphetamine to others. Charles last saw the firearm in Savage's living room during an argument they had over money she owed him for rent and food. Charles gave Savage an ounce of methamphetamine to settle her debt, but the argument continued. After Charles threw a soft drink on Savage, he went to his bedroom and returned with the firearm she had seen in his closet. Savage pointed the gun at Charles and told her to "pack up and get out of his house."

In addition to Charles's testimony that Savage distributed methamphetamine from his apartment during the summer of 2002, the district court considered other evidence that established continuous methamphetamine trafficking by Savage from January, 2003, until his arrest in August, 2003. In light of the events Charles described and other evidence concerning Savage's methamphetamine distribution, the district court imposed the two-level § 2D1.1(b)(1) enhancement to Savage's base offense level, concluding that it was not clearly improbable the firearm was connected to Savage's drug dealing.

## B.    ANALYSIS

This Court reviews the district court's interpretation and application of the guidelines de novo and its findings of fact for clear error. *United States v. Mashek*, 406 F.3d 1012, 1016-17 (8th Cir. 2005) (holding that *Booker* did not affect this Court's standards of review for a sentencing court's application of the sentencing guidelines); *see also United States v. Atkins*, 250 F.3d 1203, 1213 (8th Cir. 2001) (holding that this Court reviews for clear error a district court's finding that a defendant possessed a firearm during a drug trafficking offense).

First, Savage contends that the district court clearly erred by applying the dangerous-weapon enhancement of § 2D1.1(b)(1) because of the time that elapsed between his possession of the gun and his arrest and the lack of direct evidence connecting the firearm to the drug trafficking offense to which he pled guilty. We disagree.

Section 2D1.1(b)(1) mandates a two-level enhancement if the Government can prove by a preponderance of the evidence that the defendant possessed "a dangerous weapon (including a firearm)" while violating 21 U.S.C. § 841(b). U.S.S.G. § 2D1.1(b)(1); *see also United States v. McCracken*, 110 F.3d 535, 541 (8th Cir. 1997). The firearm must be connected with the criminal activity before its possession can be

used to enhance the defendant's sentence. *United States v. Turpin*, 920 F.2d 1377, 1386 (8th Cir. 1990). The mere presence of a firearm is an insufficient predicate for a § 2D1.1(b)(1) enhancement. *United States v. Shields*, 44 F.3d 673, 674 (8th Cir. 1995); U.S.S.G. § 2D1.1, cmt. n.3 ("For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet."). The enhancement, however, "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3; *see also United States v. Moore*, 184 F.3d 790, 794 (8th Cir. 1999).

Savage argues that the district court erred in applying the § 2D1.1(b)(1) dangerous-weapon enhancement because of the break in time between the summer of 2002, when Charles observed the firearm in Savage's apartment, and his arrest roughly one year later. We disagree because the dangerous-weapon enhancement applies if the firearm is present during "relevant conduct," as defined by U.S.S.G. § 1B1.3(a)(2), not merely during the offense of conviction. *United States v. Barresse*, 115 F.3d 610, 612 (8th Cir. 1997). In other words, the dangerous-weapon enhancement applies if the weapon was used during acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *United States v. Moore*, 212 F.3d 441, 447 (8th Cir. 2000) (holding that when determining what constitutes relevant conduct, "the district court 'should consider the similarity, regularity, and temporal proximity of the conduct.'" (quoting *United States v. Geralds*, 158 F.3d 977, 979 (8th Cir. 1998))).

In this case, the Government presented evidence that Savage sold the same drug, methamphetamine, in the same manner over the course of a year. Although the record is devoid of evidence of Savage's activities between the summer of 2002 and January 2003, that break is insignificant given the evidence of Savage's multi-month drug dealing. Based on Savage's established history of drug dealing, the district court reasonably inferred that Savage's activities during the summer of 2002 were part of

the same course of conduct as his offense of conviction. Thus, the district court did not clearly err by applying the § 2D1.1(b)(1) enhancement for a firearm possessed during drug trafficking that occurred prior to Savage's offense of conviction because the prior trafficking was properly considered relevant conduct under § 1B1.3(a)(2). *Cf. United States v. Anderson*, 243 F.3d 478, 485 (8th Cir. 2001) (holding that drug quantities involved in events that occurred several years before the offense of conviction were relevant conduct).

Savage also argues that the district court erred in applying the § 2D1.1(b)(1) enhancement because there was no evidence directly connecting the firearm to his drug trafficking, and the only evidence that he handled the firearm related to a domestic dispute instead of a drug transaction. We disagree because the Government need not show that a defendant used or even touched a weapon to prove a connection between the weapon and the offense. *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000). Even if Savage brandished the firearm during a domestic dispute with Charles rather than during a drug transaction, the district court heard ample evidence that the firearm was readily accessible during his drug dealing activities. The firearm was not locked in a cabinet or otherwise stored away, but instead was readily accessible in the bedroom of his small apartment where Savage was observed using a scale to weigh methamphetamine and where he was observed selling methamphetamine to others. The district court properly focused on the fact that the firearm was readily accessible to him in the small apartment and would be available to him in the event of a dispute during the course of a drug transaction. This accessibility was proven by Savage's ability to access and use the firearm during his domestic dispute with Charles. Under those circumstances, we hold that the district court did not clearly err in finding that it was not clearly improbable that the firearm was connected with Savage's drug trafficking. *Cf. United States v. Betz*, 82 F.3d 205, 210-11 (8th Cir. 1996) (holding that the district court did not clearly err in applying a §2D1.1(b)(1) enhancement because guns were "found on premises from which Betz conducted drug-related activities where they were readily accessible to Betz"). Thus,

we affirm the district court's application of a two-level enhancement under § 2D1.1(b)(1) to Savage's offense level.

Second, in a supplemental brief Savage challenges the mandatory application of the sentencing guidelines under *United States v. Booker*. Because Savage failed to argue *Apprendi* or *Blakely* error or that the guidelines were unconstitutional before the district court, we review for plain error. *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc).

To establish plain error under *Pirani*, Savage bears the burden of demonstrating "a reasonable probability that he would have received a more favorable sentence with the *Booker* error eliminated by making the Guidelines advisory." *Id*. at 551. Savage fails to meet this burden because there is no indication in the record that, given broader discretion, the district court would have imposed a different sentence. *See, e.g.*, *United States v. Light*, 406 F.3d 995, 1000 (8th Cir. 2005). Therefore, the district court did not commit reversible plain error in sentencing Savage under mandatory guidelines.

## C.    CONCLUSION

For the reasons set forth above, we affirm.

_____