# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4415

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| David Lee Willie, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 12, 2006
Filed: September 11, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

David Lee Willie appeals the judgment and sentence of the district court[1] following his conviction for possessing pseudoephedrine while knowing or having reasonable cause to believe that it would be used to manufacture a controlled substance under 21 U.S.C. § 841(c)(2). Following Willie's conviction, the district court determined Willie's base offense level under the advisory United States Sentencing Guidelines (USSG). It then applied a two-level enhancement for

_____

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

possessing a firearm in connection with the offense because police discovered rifles in Willie's motel room, in close proximity to the pseudoephedrine at issue. The court thereafter issued a non-Guidelines sentence that represented a downward variance from the resulting Guidelines range.

Willie makes three arguments on appeal: (1) the search of the motel room where the pseudoephedrine was found was unlawful under the Fourth Amendment, (2) the presence of two other people in the motel room rendered the evidence of knowing drug possession too ambiguous to support his conviction, and (3) there was insufficient evidence connecting the firearms to his offense. We affirm.

## I. BACKGROUND

Around 4:00 on the morning of June 10, 2003, Eureka, Missouri, Police Department Officer William Knittel stopped to investigate an illegally-parked vehicle in the fire lane of the local Super 8 Motel. The owner of the car, David Lee Willie, was loading boxes into the vehicle when Knittel first observed him. Knittel quickly recognized Willie as a local resident and asked why he was loading boxes at a motel at such an early hour, particularly because Willie had a home in the area. Willie claimed that he and his wife were separating, and he was loading boxes to return to her. When Knittel asked where his wife was located, Willie claimed he did not know where to find her. During this exchange, Knittel also observed symptoms of methamphetamine use or production, including sores on Willie's face, the smell of anhydrous ammonia, and Willie's inability to stand still.

As Knittel was writing Willie a citation for illegal parking, Officer Michael Smith arrived as back-up. Smith noticed a knife in Willie's pocket and, upon receiving Willie's consent, removed the knife. Smith also noticed and removed a cut straw from the pocket. The straw had a white residue on it that field-tested positive

for methamphetamine. Smith arrested, handcuffed, and placed Willie in the back of Knittel's squad car, but did not read him his Miranda[2] rights at that time.

Upon questioning, Willie said he was staying with two other people in room 124 of the motel. Knittel knocked at the door to room 124, met briefly with the two occupants, and then re-joined Smith to conduct an inventory search of Willie's car. That search uncovered significant evidence of drug use and trafficking. Among other items, Officers Knittel and Smith found: plastic bags of marijuana and methamphetamine; a digital scale; residue-laden straws, razor blades, and pen shafts; a water pipe or "bong"; a sheet of paper listing names, dates, monetary amounts, and drug references; a reference guide to over-the-counter medications; a printout from an online drug chemistry newsgroup; and nearly $15,000 in cash. Later on, a more thorough search of the car at the impoundment lot revealed plastic funnels, a gas mask, and another piece of paper with names, telephone numbers, and monetary amounts. At a pretrial evidentiary hearing, Knittel testified that he also found a tan lockbox during the initial inventory search and asked Willie if he would unlock it, but Willie refused consent.

Sergeant Jason Randall arrived on the scene during the inventory search and asked for Willie's consent to search the motel room. Willie gave his consent to the search, and Randall and Smith proceeded to search room 124. In it, they saw numerous boxes stacked along the walls of the room, several rifles that Smith believed he recognized from an unrelated visit to Willie's home a few weeks before, and two duffel bags on the floor. The two remaining occupants of the room disclaimed ownership of any of the items other than a small pile of clothing.

The officers seized the duffel bags but left the rifles, which Smith assumed to be unloaded. One duffel bag contained more than 13,000 pseudoephedrine pills, a

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

chemical used in the production of methamphetamine. The other bag contained equipment that could be used to manufacture methamphetamine. Later that day, Knittel received confirmation from the motel that room 124 was registered to Willie.

A grand jury indicted Willie for possession of pseudoephedrine with knowledge or reasonable cause to believe that it would be used to manufacture a controlled substance under 21 U.S.C. § 841(c)(2). The district court denied Willie's motion to suppress the evidence gathered from the motel room. Willie proceeded to trial and a jury found him guilty.

At the sentencing hearing, the district court determined Willie's Guidelines range. The court found that Willie had zero criminal history points and a base offense level of thirty-four (carrying a Guidelines sentencing range of 151 to 188 months). Over Willie's objection, the court also applied a two-level enhancement pursuant to Guidelines section 2D1.1(b)(1) for possessing firearms in connection with the offense, for a total offense level of thirty-six (carrying a Guidelines sentencing range of 188 to 235 months). The district court then varied from the Guidelines and imposed a sentence of 135 months.

## II. DISCUSSION

### A. Willie's Consent to Search the Motel Room

First, Willie contends that the search of his motel room was unlawful under the Fourth Amendment because his consent to the search was given involuntarily. In particular, he points out that he was under arrest when Officer Randall asked for his consent, he had not received any Miranda warnings at that time, and he was visibly intoxicated from methamphetamine use, all of which served to vitiate his purported consent to the search.

The government bears the burden of proving voluntary consent to a search by a preponderance of the evidence, United States v. Czeck, 105 F.3d 1235, 1239 (8th Cir. 1997), and we review a district court's finding of voluntary consent under a clear error standard. United States v. Siwek, 453 F.3d 1079, 1083 (8th Cir. 2006); United States v. Mancias, 350 F.3d 800, 804 (8th Cir. 2003). The question of voluntariness requires a broad factual inquiry; there is no bright-line rule to determine when an "'essentially free and unconstrained choice,'" Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973) (quotation omitted), becomes one that is "the result of duress or coercion." Id. at 248. Instead, we consider the "totality of all the circumstances." Id. at 227.

Our case law offers a catalogue of factors to consider in judging the voluntariness of a defendant's consent to search. Some relate to the characteristics and behavior of the defendant, such as the defendant's age, intelligence and education, knowledge of his constitutional rights (whether from Miranda warnings in the encounter at issue or from previous interactions with police), whether he was under the influence of drugs or alcohol, and whether he objected to the search or stood by silently as it was occurring. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). Others relate to the environment surrounding the defendant at the time he gave his consent, such as whether he was in custody or under arrest and whether he was in a public or secluded place. Id. Still others relate to the interaction between police and the defendant in the encounter, such as whether police officers detained and questioned the defendant for a long time before obtaining his consent, whether they threatened, physically intimidated, or punished him, and whether they made promises or misrepresentations upon which the defendant relied in giving his consent. Id. No one factor is dispositive; they are merely tools for analyzing the "totality of all the circumstances." Bustamonte, 412 U.S. at 227.

While some of these factors weigh against voluntariness in this case, we cannot say that the district court clearly erred in its determination of the ultimate question:

whether Willie's "'will ha[d] been overborne and his capacity for self-determination critically impaired'" such that his consent to the search of his motel room was involuntary. United States v. Watson, 423 U.S. 411, 424 (1976) (alteration in original) (quoting Bustamonte, 412 U.S. at 225). Willie was forty-eight years old at the time of his arrest. He was a high school dropout, but he possessed the aptitude to operate his own extermination business from 1989 to 2002. He may have been under the influence of methamphetamine at the time of his arrest, but the evidence does not suggest that he was so intoxicated that he was not "competent to understand the nature of his acts." United States v. Rambo, 789 F.2d 1289, 1297 (8th Cir. 1986). He generally cooperated with police, responded to their questioning, and knew the number of the motel room where he was registered. We cannot presume (as Willie would have us do) that his inability to offer the police a convincing explanation of his activities that morning is proof positive that he lacked the mental capacity to consent to the search.

It is also true that police had not issued Willie Miranda warnings before he consented to the search, but that fact—like the other factors above—is not determinative of the question of voluntariness. See Bustamonte, 412 U.S. at 246-49; United States v. Lee, 356 F.3d 831, 834 (8th Cir. 2003) ("Miranda warnings . . . are not required for consent to a search to be voluntary, although they can lessen the probability that a defendant was subtly coerced."). Furthermore, even without the warnings, there is evidence that Willie was aware of his constitutional rights. His prior consent to the search of his pockets and his refusal to consent to a search of the tan lockbox, coupled with the fact that Officer Knittel honored this refusal, suggest that Willie understood both the consequences of granting consent and his right to refuse it.

Willie also offers no evidence of police intimidation or misrepresentation, nor of an environment that would give rise to a presumption of involuntary choice. Willie was under arrest and handcuffed at the time he gave his consent, but he had not been

subjected to extended questioning and had only been under arrest for, at most, the time that it took officers to meet briefly with the fellow occupants of room 124 and complete an inventory search of his vehicle. In addition, he was in a public place (the motel parking lot) at all times leading up to his grant of consent. See Watson, 423 U.S. at 424 (finding valid consent despite a defendant's arrest when the consent was given in a public setting and there was no evidence of coercive police tactics). In short, the totality of the circumstances does not suggest that Willie's consent was anything other than a free choice, and the district court did not err in so finding.

### B. Sufficiency of the Evidence

Second, Willie claims that the government failed to meet its burden of proving that the pills in the motel room were in his possession because two other people were present in the room when police arrived. Our review of claims of insufficient evidence is "very strict," United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006) (quotation omitted), as we "view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Blazek, 431 F.3d 1104, 1107 (8th Cir. 2005) (quotation omitted). We will reverse only if no reasonable jury could have found Willie guilty. United States v. Walker, 393 F.3d 842, 846 (8th Cir. 2005).

Here, a reasonable jury had more than enough evidence to conclude that Willie possessed the pseudoephedrine pills in question. The motel room where they were found was registered in his name, and he told officers that it was his room. The combination of the pills and meth lab equipment found in Willie's room with the narcotics, paraphernalia, and large amounts of cash in Willie's car, as well as the visible signs of Willie's own drug use, points to his possessory interest in the pills. Given these clear connections between Willie, the motel room, and the pills within it,

a rational juror could certainly conclude beyond a reasonable doubt that Willie possessed the pseudoephedrine.

### C. Application of the Sentencing Guidelines

Finally, Willie argues that the district court erred in enhancing his base offense by two levels under USSG section 2D1.1(b)(1) for possessing "dangerous weapon[s]," specifically the rifles in the motel room.[3]  Willie contends that the facts made it "clearly improbable that the weapon[s] w[ere] connected with the offense," an exception enunciated in the commentary to section 2D1.1(b)(1).  See USSG §2D1.1, comment. (n.3).  "We review the district court's findings of fact for clear error and its application of the Sentencing Guidelines de novo." United States v. Burling, 420 F.3d 745, 749 (8th Cir. 2005) (citation omitted).

Willie correctly points out that "[t]he mere presence of a firearm is an insufficient predicate for a [section] 2D1.1(b)(1) enhancement" and that the weapon "must be connected with the criminal activity before its possession can be used to enhance the defendant's sentence." United States v. Savage, 414 F.3d 964, 966 (8th

---

[3]Given the fact that the district court sentenced Willie to 135 months in prison—well below both his base level and enhanced sentencing ranges under the Guidelines—it is possible that this alleged error is harmless.  See United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005) (noting that "there may be situations where an error in calculating the appropriate guidelines range is harmless and, therefore, does not require immediate remand," such as "where the resulting sentence lies in the overlap between the correct and incorrect guidelines ranges" and "it is clear that the sentencing court would have imposed the same sentence regardless of whether the appellant's argument for a lower guideline range ultimately prevailed") (quotation omitted).  Here, Willie's sentence is below the sentencing range that he asserts as correct, and there is little evidence from the sentencing transcript that the district court would have given a lesser sentence had it not applied the enhancement.  Nevertheless, because we find that the district court did not err in enhancing Willie's Guidelines range, we need not apply "harmless error" analysis to decide this issue.

Cir. 2005). But Willie fails to appreciate the breadth of the word "connected" in this context. The weapon need not be in the defendant's actual possession at the time he committed the crime. Constructive possession will suffice, United States v. Dillard, 370 F.3d 800, 804 (8th Cir. 2004), particularly if the weapon is "readily accessible" at the place where the defendant commits the crime. Savage, 414 F.3d at 967. In short, the government need only show a "temporal and spatial nexus among the weapon[s], defendant, and drug-trafficking activity." United States v. Torres, 409 F.3d 1000, 1003 (8th Cir. 2005).

This broad definition of "connected" within the context of section 2D1.1(b)(1) necessarily limits the scope of the term "clearly improbable," and that exception is consequently too narrow to apply in this case. While the evidence shows that Willie seemed to be living out of his car and the motel room, this case is not analogous to one where "the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." USSG §2D1.1 comment. (n.3). Rather, this is a case where the defendant possessed several rifles in a motel room, possibly loaded,[4] mere feet from a very large quantity of pseudoephedrine and other materials used for manufacturing methamphetamine. That the rifles apparently caused little concern for police officers on the scene does not change the fact that they were dangerous weapons and would have been easily accessible to Willie when he was in the room.[5] The mere fact that Willie was arrested outside the motel room does not overcome other evidence connecting him to the rifles: the room was registered in his name, he apparently owned the rifles therein, and he was in the process of moving items between the room

---

[4]The only evidence that the guns were unloaded came from the testimony of Officer Smith, who stated on cross-examination that he believed they were unloaded. The police did not seize the rifles, and there is no other evidence as to whether they were loaded or not.

[5]Police officers testified that they saw the guns between one of the beds and a wall when they first walked into the motel room. They found the duffle bags of pseudoephedrine near the foot of the same bed.

and his car when confronted by police. Under these circumstances, his possession—actual or constructive—of the rifles is clear.

We note that it is possible on these facts that Willie was moving all of his possessions into the motel room, that his storage of the rifles there was merely incidental to his drug operation, and that he used those rifles solely for hunting. But given the large quantity of pills at issue and their close proximity to the rifles, we cannot say that it is "clearly improbable" that the rifles instead operated as "tools of the drug trade providing protection and intimidation." United States v. Hallam, 407 F.3d 942, 949 (8th Cir. 2005) (quoting United States v. Linson, 276 F.3d 1017, 1019 (8th Cir. 2002)); see also United States v. Behler, 187 F.3d 772, 777-78 (8th Cir. 1999) (finding that a defendant's claim that a weapon was used for hunting was irrelevant for section 2D1.1(b)(1) purposes when the defendant carried that weapon while committing narcotics offenses). Therefore, the district court did not err in enhancing Willie's Guidelines range due to the presence of the rifles, and we affirm the sentence of the district court.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence of the district court.

_____