

# In the Missouri Court of Appeals
## Eastern District
**DIVISION THREE**

| | | |
|---|---|---|
| WILKENDON PARTNERSHIP, et al., | ) | No. ED103879 & ED103907 |
| | ) | |
| Plaintiff/Appellants, | ) | |
| | ) | Appeal from the Circuit Court of |
| vs. | ) | St. Louis County |
| | ) | |
| ST. LOUIS COUNTY | ) | |
| BOARD OF EQUALIZATION, et al., | ) | Honorable Joseph L. Walsh |
| | ) | |
| Defendant/Respondent. | ) | Filed: September 6, 2016 |

## OPINION

Wilkendon Partnership and Joseph C. Sansone Company appeal from the trial court's judgment dismissing their lawsuit against the St. Louis County Board of Equalization under the Missouri Sunshine Act. We reverse and remand.

## Background

The respondent Board is a statutorily created body that hears approximately 20,000 property tax assessment appeals annually for St. Louis County. Taxpayers and the county assessor may present evidence at an appeal hearing, after which the Board either deliberates and decides the appeal immediately or takes it under advisement and deliberates later as time allows, usually the latter when an appeal involves commercial or multiple residential properties. Pursuant to its governing statute, the Board must hold these hearings in July and August and decide them all by the fourth Saturday in August.

Appellant Wilkendon Partnership owns commercial property in St. Louis County. Appellant Joseph C. Sansone Company represents Wilkendon and other taxpayers in property assessment appeals before the Board. In July 2015, Sansone began appearing for hearings on its clients' property tax valuations, including Wilkendon's, and observed an absence of publicly posted meeting notices at either of the Board's meeting locations. Evidently in response to Sansone's complaint, in a letter dated August 5, the Board indicated that it was "willing to provide posted notices" of all hearings and deliberations, and that "all hearings and deliberations are open to the public." The Board notified Appellants via email of the date and time of their hearing. The Board posted a public notice dated August 10 stating that it would conduct "an open meeting, hearings, and deliberations" on August 11. Appellants attended and presented evidence on August 11 and 12.

At some point on August 11, a recess was taken, and the Board, its attorney, and the county assessor convened privately in a "back room." When Appellants' attorney protested, the attorney for the Board returned to the hearing room to place on the record that the Board was going into a closed session "to discuss legal matters." A few minutes later, the Board returned and voted to enter a closed session to discuss legal matters, subsequently emptying the room. During hearings on August 12, the Board again voted to enter a closed session to discuss legal issues. Appellant's attorney objected on the basis that the Board did not post notice of the meeting twenty-four hours in advance. The Board eventually relocated to complete its closed session.

On August 13, Appellants filed a lawsuit against the Board alleging multiple violations of the Sunshine Act. Specifically, the petition alleged that the Board: failed to

notify Appellants of their tax appeal hearing by mail or personal service; failed to post public notice of Appellants' hearing in certain locations and in a manner reasonably calculated to advise the public; conducted the August 11 and 12 closed meetings without posting notice 24 hours in advance; as a general practice, fails to post notice in a manner reasonably calculated to advise the public of its meetings to deliberate on and decide appeals; deliberates in secret, depriving taxpayers of the rationale for its decisions; and refused Appellants' request for certain records. Count I of Appellants' petition sought civil penalties and attorney fees. Count II sought declaratory judgment as to the foregoing violations and the Board's re-hearing of Appellants' property tax appeals. Count III sought injunctive relief in the form of the Board's compliance with Sunshine notice provisions and re-hearing of all of Sansone's clients' property tax appeals.

On Friday, August 21, one day before the fourth Saturday of August 2015, Appellants filed a separate motion for a temporary restraining order to compel the Board's compliance with the Sunshine Act open meetings requirements. On Tuesday, August 25, the trial court granted the motion in part, finding that the Board was subject to Sunshine requirements. The court ordered the Board to open all meetings involving Sansone clients for the remainder of the 2015 session[1] but provided that the Board could hold closed meetings without 24 hours' notice to discuss legal matters, though not with county personnel present.

In October 2015, Board responded to Appellants' petition with a motion to dismiss for (1) failure to state a claim on which relief could be granted, in that the Board acts in a judicial capacity when deciding tax appeals and therefore is not subject to

---

[1] The record does not reflect whether the Board's session terminated on August 22 – the fourth Saturday of the month – or instead continued past that statutory mandate.

Sunshine requirements, and (2) lack of subject matter jurisdiction in that Appellants failed to exhaust their administrative remedies by appealing the underlying property tax assessment to the Missouri State Tax Commission.

The trial court granted the Board's motion to dismiss on both grounds. Appellants challenge each determination in separate points.

## Standard of Review

Our review of a dismissal for failure to state a claim is *de novo*. Chochorowski v. Home Depot U.S.A., Inc., 295 S.W.3d 194, 197 (Mo. App. E.D. 2009). A motion to dismiss for failure to state a claim upon which relief can be granted is solely a test of the adequacy of the petition. Id. We accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and we construe all allegations favorably to the pleader. Id. We do not weigh the factual allegations to determine whether they are credible or persuasive. Id. Instead, we review the petition in an almost academic manner to determine if the facts alleged meet the elements of a recognized cause of action. Id.

## Applicable Statutes

Two separate statutory schemes govern the Board's notice procedures. Chapter 138 applies to the Board specifically. Chapter 610 (the Sunshine Act) applies to public governmental bodies generally. Where the two overlap, compliance with the former constitutes compliance with the latter. §610.022.6. Relevant provisions state as follows.

*Chapter 138 - Board of Equalization*

§138.060. 1. [The Board] shall, in a summary way, determine all appeals from the valuation of property made by the assessor, and shall correct and adjust the assessment accordingly. There shall be no presumption that the assessor's valuation is correct. […] In the event the assessor fails to provide sufficient evidence to establish that the physical inspection was performed …, the property owner shall prevail on the appeal as a matter of law.

4

§138.100.1

(1) [The Board] shall raise the valuation of all tracts or parcels of land and all tangible personal property as in their opinion have been returned below their real value; but, after the board has raised the valuation of such property, notice shall be given that said valuation of such property has been increased and a hearing shall be granted; such notice shall be in writing and shall be directed to the owner of the property or the person controlling the same, at his last address as shown by the records in the assessor's office, and shall describe the property and the value thereof as increased; such notice may be by personal service or by mail and if the address of such person or persons is unknown, notice may be given by publication in two newspapers published within the county; such notice shall be served, mailed or published at least five days prior to the date on which said hearing shall be held at which objections, if any, may be made against said increased assessment;

(3) [The Board] shall provide the taxpayer with written findings of fact and a written basis for the board's decision regarding any parcel of real property which is the subject of a hearing before any board of equalization.

*Chapter 610 - Sunshine Act*

§610.011.1. It is the public policy of this state that meetings, records, *votes, actions, and deliberations of public governmental bodies be open to the public* unless otherwise provided by law. [The Act] shall be liberally construed and [its] exceptions strictly construed to promote this public policy.

§610.010(4). *Public governmental body* [means] any legislative, administrative or governmental entity created by the Constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order, including … (d) any other legislative or *administrative governmental deliberative body under the direction of three or more elected or appointed members having rulemaking or quasi-judicial power.*

§610.020.

1. All public governmental bodies shall give notice of the time, date, and place of each meeting, and its tentative agenda, in a manner reasonably calculated to advise the public of the matters to be considered … […]

2. Notice … shall be given at least twenty-four hours … prior to the commencement of any meeting of a governmental body unless for good cause such notice is impossible or impractical, in which case as much notice as is reasonably possible shall be given. ….

4. When it is necessary to hold a meeting on less than twenty-four hours' notice, … the nature of the good cause justifying that departure from the normal requirements shall be stated in the minutes.

7. A journal or minutes of open and closed meetings shall be taken and retained by the public governmental body, including, but not limited to, a record of any votes taken at such meeting. The minutes shall include the date, time, place, members present,

members absent and a record of any votes taken. ...

§610.021. Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to the extent they relate to … (1) Legal actions, causes of action or litigation involving a public governmental body and any confidential or privileged communications between a public governmental body or its representatives and its attorneys.

§610.022.

1. Except as set forth in subsection 2 of this section, no meeting or vote may be closed without an affirmative public vote of the majority of a quorum of the public governmental body. The vote of each member of the public governmental body on the question of closing a public meeting or vote and the specific reason for closing that public meeting or vote by reference to a specific section of this chapter shall be announced publicly at an open meeting of the governmental body and entered into the minutes.

2. A public governmental body proposing to hold a closed meeting or vote shall give notice of the time, date and place of such closed meeting or vote and the reason for holding it by reference to the specific exception allowed pursuant to the provisions of section 610.021. Such notice shall comply with the procedures set forth in section 610.020 for notice of a public meeting.

3. Any meeting or vote closed pursuant to section 610.021 shall be closed only to the extent necessary for the specific reason announced to justify the closed meeting or vote. Public governmental bodies shall not discuss any business in a closed meeting, record or vote which does not directly relate to the specific reason announced to justify the closed meeting or vote.

§610.027.5. Upon a finding by a preponderance of the evidence that a public governmental body has violated any provision of [the Act], a court shall void any action taken in violation of [the Act] if the court finds under the facts of the particular case that the public interest in the enforcement of the policy of [the Act] outweighs the public interest in sustaining the validity of the action taken in the closed meeting, record or vote.

**Analysis**

*Application of the Sunshine Act to the Board's Decisions (Point I)*

For their first point, Appellants contend that the Board is not a judicial entity but rather an administrative body with quasi-judicial power, so its meetings, including deliberations and decisions, must comply with the Sunshine Act. The Board counters that it is indeed a judicial entity and therefore not subject to Sunshine transparency

requirements.[2]

The trial court in its judgment and the Board in its brief focus solely on whether the Board acts in a judicial capacity when it deliberates on and decides property tax appeals. But Appellants do not dispute that premise. There is no question that the Board exercises a quasi-judicial function in deciding tax appeals. State ex rel. Johnson v. Merchants' & Miners' Bank, 213 S.W. 815, 817 (Mo. banc 1919) (board of equalization proceedings are "judicial in character"); May Dep't Stores Co. v. State Tax Comm'n, 308 S.W.2d 748, 757 (Mo. 1958) (state tax commission acts in a "judicial capacity"); State ex rel. State Tax Comm'n v. Brisco, 451 S.W.2d 1, 5 (Mo. banc 1970) (same).

That premise, however, does not answer the central question here as to whether the Board's actions are nonetheless subject to the Sunshine Act. The trial court relied substantially on Nashrallah, D.C. v. Missouri State Board of Chiropractic Examiners, where the majority (J. Smith dissenting) held that a state professional licensing board did not violate the Sunshine Act by holding closed deliberations after a hearing in disciplinary proceedings. 1996 WL 678640 (Mo. App. W.D. 1996). But Nashrallah has absolutely no precedential value, as the case was transferred to the Missouri Supreme Court and later dismissed. "The decision of the court of appeals in a case subsequently transferred [to the Supreme Court] is of no precedential effect." Gerlach v. Missouri Comm'n on Human Rights, 980 S.W.2d 589, 594 (Mo. App. E.D. 1998). Moreover, even if Nashrallah were authoritative on its facts, the court there specifically distinguished a case more analogous to this one holding that deliberations of boards of adjustment are

---

[2] In contrast to its position on appeal and as chronicled in the background section, in August 2015, the Board appeared to accept the mandates of the Act, attempted to satisfy them, and invoked the exception for privileged communications. We do not reach the factual question of whether the Board successfully complied with the Act. That determination is for the trial court on remand.

subject to the Sunshine Act. <u>Remington v. City of Boonville</u> is still good law and is instructive here. 701 S.W.2d 804 (Mo. App. W.D. 1985).

In <u>Remington</u>, an applicant who was denied a zoning permit for a car wash appealed the decision to the local board of adjustment. The board gave proper notice and conducted a public hearing, after which it "retired in secret session to deliberate and vote" and ultimately granted the permit. Opponents of the car wash filed a petition for declaratory judgment and injunctive relief asserting that the board violated the Sunshine Act by deciding the appeal in a closed meeting. As here, the board claimed that it was exempt from the Act because it was acting in a quasi-judicial capacity. But the appellate court held that the board was indeed subject to Sunshine transparency rules, reasoning as follows:

> By its very nature, the quintessence of a "public governmental body" is the power to govern by the formulation of policies and the promulgation of statutes, ordinances, rules and regulations, *or the exercise of quasi-judicial power.* Administrative bodies, even when acting in a quasi-judicial capacity, cannot circumvent compliance with the "open meeting" requirements of §§610.010, et seq., as the Board of Adjustment and its members seek to do, by riding on the coat tails of legislative exclusion of the judiciary. The fallacy of attempting to do so is fourfold: (1) the judiciary is not a "public governmental body" as presently defined in §610.010(2) RSMo Supp.1982, while, on the other hand, administrative tribunals such as Boards of Adjustment are clearly "public governmental bodies" as defined therein; (2) Boards of Adjustment possess no judicial power, even when acting in a quasi-judicial capacity, as judicial power is vested exclusively in the courts under Art. V, § 1, Mo. Const.; (3) none of the activities of Boards of Adjustment are exempt under any of the provisions of § 610.025, RSMo Supp.1982; and (4) subjecting Boards of Adjustment, even when acting in a quasi-judicial capacity, to the requirements of §610.010, et seq., is in harmony with §89.080, RSMo 1978, mandating that all meetings of the board shall be open to the public.
>
> Both the letter and spirit of [the Act] bespeak of a legislative intent to subject all meetings of Boards of Adjustment, including deliberations while acting in a quasi-judicial capacity, to the "open meeting" requirements of Missouri's Sunshine Law.

Id. at 807. (emphasis original)  These fundamental policy and constitutional principles survive today and dictate the result here.

Despite the foregoing, the Board insists: "While it is adjudicating, a quasi-judicial agency is akin to a constitutional court. As a result, whenever an administrative agency functions in its quasi-judicial capacity, it is acting as a type of judicial entity." Taking the Board's argument to its logical extreme, every administrative body with an adjudicative function is a judicial entity not subject to Sunshine, effectively eviscerating the entirety of §610.010(4)(d) defining "public governmental body" to include administrative agencies with quasi-judicial powers.  The Board's rationale also offends the separation of powers doctrine by conflating Article IV "administrative agencies with quasi-judicial power" and Article V "judicial entities acting in administrative capacity." This is an absurd result and a violation of basic constitutional foundations.

"Executive agencies may exercise quasi-judicial powers that are incidental and necessary to the proper discharge of their administrative functions, even though by doing so they at times determine questions of a purely legal nature." State Tax Comm'n v. Admin. Hearing Comm'n, 641 S.W.2d 69, 75 (Mo. 1982).  But "an administrative body or even a quasi-judicial body is not and cannot be a court in a Constitutional sense." Id. Judicial power is vested exclusively in the courts. Art. V, §1 Mo. Const.  "Judicial entities" are comprised entirely of Article V judges. Johnson v. State 366 S.W.3d 11 (Mo. 2012).  The Board is not a judicial entity.

Additionally, the trial court reasoned that the notice provisions of Chapter 138, specifically applicable to the Board, would be superfluous if the Sunshine Act also applied. This rationale fails because the Act is intended to co-exist with more specific

rules in other statutes applying to some entities. Section 610.020.6 expressly states: "If another provision of law requires a manner of giving specific notice of a meeting, hearing or an intent to take action by a governmental body, compliance with that section shall constitute compliance with the notice requirements of this section." [3] In other words, chapter 138 does not fully eclipse the Sunshine Act.

For the foregoing reasons, the Board's attempts to distinguish Remington are unavailing. Specifically, the Board argues that Remington is not controlling because (1) the definition of "public governmental body" has since changed to include judicial entities acting in an administrative capacity and (2) chapter 138 does not contain an open meeting requirement similar to §89.080, deemed harmonious in Remington. These distinctions in no way undermine Remington's precedential value as applied here. The amendment to the definition of "public governmental body" does not affect this case; the Board is an administrative body, not a judicial entity. And although §89.080 imposed different specific requirements than chapter 138 imposes on the Board, the legislative intent for harmony is equally evident. Remington is not only instructive for its rationale but also authoritative in its precedent.

The General Assembly has expressly declared its policy objective that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law. §610.011.1. Our lawmakers have further directed that the Act shall be liberally construed, and its exceptions strictly construed, in furtherance of that public policy. Id. Simply put, the Board enjoys no special exception. As a matter of law, the Board is a public governmental body subject to the Sunshine Act,

---

[3] Necessarily, then, non-compliance with chapter 138 would also constitute a Sunshine violation.

10

even when deliberating and deciding tax appeals in a quasi-judicial capacity, and therefore must comply with the mandates of the Act.[4]

While we appreciate the Board's argument that full compliance with Sunshine meeting notice requirements is impractical given the volume of appeals filed each year and the statutory requirement that they be heard and decided in a two-month period, that particular complaint must be lodged with the legislature. Courts must give effect to the language of a statute as written, and issues of public policy must be addressed to the General Assembly. Spradlin v. City of Fulton, 982 S.W.2d 255, 261 (Mo. 1998).

Point I is granted. On remand, the trial court will be guided by §610.027.5. If the trial court finds by a preponderance of the evidence that the Board has violated the Act, then the court shall void any action taken in violation of the Act if the court finds that the public interest in enforcing the policy of the Act (§610.011.1) outweighs the public interest in sustaining the validity of those actions.

*Exhaustion of Remedies (Point II)*

For their second point, Appellants contend that the trial court erred by dismissing their petition for lack of jurisdiction for failure to exhaust administrative remedies. This aspect of the Board's motion to dismiss was misplaced and the trial court's resulting determination premature. This Sunshine action is wholly unrelated to the substantive propriety of the underlying property tax assessments. After remand, whether the trial court upholds the Board's original assessments or voids them and orders re-hearing as provided by the Act, and whether such a re-hearing results in the same or a different

---

[4]Appellants do not dispute that the Sunshine Act authorizes the Board to consult legal counsel in a closed meeting subject to certain requirements and limitations of §§610.020, 610.021(1), and 610.022. Under those provisions, a closed meeting for privileged communications with counsel is authorized, even without 24 hours' notice so long as good cause for shorter notice is stated in the minutes.

assessment, Appellants can then appeal the Board's assessments to the State Tax Commission. As point I is dispositive on the Sunshine issue and any future tax appeal would follow as a separate action, point II is essentially moot.

### Conclusion

The trial court's judgment of dismissal in favor of the Board is reversed, and the case is remanded for an evidentiary hearing and further proceedings consistent with this opinion.

_____
Lisa Van Amburg, Judge

Angela T. Quigless, P.J., and
Robert G. Dowd, J., concur.