In the
 Missouri Court of Appeals
 Western District
STATE OF MISSOURI, )
 )
 Respondent, ) WD83657
 )
v. ) OPINION FILED: March 30, 2021
 )
JOSHUA SMITH, )
 )
 Appellant. )

 Appeal from the Circuit Court of Boone County, Missouri
 The Honorable Kevin M.J. Crane, Judge

 Before Division Three: Karen King Mitchell, Presiding Judge, Gary D. Witt, Judge and
 Anthony Rex Gabbert, Judge

 Joshua Smith ("Mr. Smith") appeals from his conviction following a jury trial in

the Circuit Court of Boone County for one count of the Class B felony of possession of a

controlled substance with intent to distribute pursuant to section 195.211, one count of

the Class C felony of possession of more than thirty-five grams of marijuana pursuant to

section 195.202, and three counts of the Class C felony of unlawful possession of a
firearm pursuant to section 571.070.1 Mr. Smith was sentenced as a prior offender to five

eight-year terms of imprisonment to be served concurrently. We affirm.

 Factual and Procedural Background2

 On April 1, 2016, Lieutenant Philip Smith of the Boone County Sheriff's

Department ("Lieutenant Smith") was dispatched to a "check subject" call because a man

was walking through a mobile home community in the nude. When he arrived,

Lieutenant Smith observed Mr. Smith standing nude in the doorway to his mobile home.

When Lieutenant Smith approached the doorway, Mr. Smith walked away from the door

and went further into the mobile home. Lieutenant Smith walked around to the rear of

the mobile home to ensure that Mr. Smith did not leave by a rear entrance. After

determining that Mr. Smith had not exited the mobile home, Lieutenant Smith returned to

the front of the mobile home and knocked on the front door. Mr. Smith, still nude, came

outside onto his front deck without being asked and sprayed a bottle of air deodorizer

randomly into the air. Lieutenant Smith noticed that Mr. Smith's body was covered in a

clear fluid.

 Lieutenant Smith requested that Mr. Smith step down from the deck onto the

ground because Lieutenant Smith thought Mr. Smith was under the influence of a

narcotic, and Lieutenant Smith did not want to fight with him on an elevated surface if

Mr. Smith became violent. Lieutenant Smith, relying on his experience and training,

deduced that Mr. Smith was under the influence of narcotics because of his behavior,

 1
 All statutory references are to the Revised Statutes of Missouri (2016).
 2
 On review of a trial court's denial of a motion to suppress evidence, we defer to the factual findings and
credibility determinations made by the trial court and view the evidence and all reasonable inferences therefrom in
the light most favorable to the ruling of the trial court. State v. Lammers, 479 S.W.3d 624, 630 (Mo. banc 2016).

 2
including that Mr. Smith was standing nude outside at approximately 10:00 a.m., when

the temperature was forty-five degrees and the windchill was thirty-seven degrees. Mr.

Smith stepped down from the deck, and Lieutenant Smith placed Mr. Smith in handcuffs

"[s]trictly for [Lieutenant Smith's] safety and [Mr. Smith's] safety." Mr. Smith could not

be placed in a patrol car because he was covered with the clear fluid, and Lieutenant

Smith was concerned that Mr. Smith could injure himself in the patrol car or that if Mr.

Smith became combative, he could injure himself or Lieutenant Smith. Lieutenant Smith

asked Mr. Smith if they could go inside the mobile home while waiting for paramedics

because it was cold outside. Mr. Smith agreed, and the two went into the mobile home

together.

 Upon entering the mobile home, Lieutenant Smith noticed broken dishware and

that a washing machine had been turned over which could be indicative of a possible

altercation. Lieutenant Smith believed that another person might be in the mobile home

and that person could possibly be injured or could potentially injure Lieutenant Smith and

the other deputies that had responded to the call. Lieutenant Smith and another deputy

conducted a "protective sweep" and saw in plain view a green leafy substance, which

Lieutenant Smith believed to be marijuana; a brown-type substance, which Lieutenant

Smith believed to be heroin; guns; and some cash. Upon this discovery, Lieutenant

Smith exited the mobile home, secured the residence, and applied for a search warrant.

Mr. Smith was taken by ambulance to a local hospital.

 After obtaining a search warrant, Lieutenant Smith re-entered the mobile home

and found 390.07 grams of marijuana, 19.05 grams of methamphetamine, .73 grams of

 3
heroin, .84 grams of PCP, a digital scale commonly used to weigh narcotics for sale,

plastic baggies commonly used to sell narcotics, a Feg Hungary semi-automatic nine-

millimeter handgun, a High Point semi-automatic nine-millimeter handgun, a .22 caliber

Ruger semi-automatic rifle, and $2,598 in cash. Mr. Smith was a convicted felon and it

was illegal for him to possess a firearm.

 On December 16, 2016, Mr. Smith was indicted with five counts of criminal

conduct: (Count I) class B felony of possession of a controlled substance,

methamphetamine, with the intent to distribute in violation of section 195.211; (Count II)

class B felony of possession of a controlled substance, more than thirty-five grams of

marijuana, with the intent to distribute in violation of section 195.211; (Count III) class C

felony of unlawful possession of a firearm, High Point semi-automatic handgun, by a

previously convicted felon in violation of section 571.070; (Count IV) class C felony of

unlawful possession of a firearm, Feg Hungary semi-automatic handgun, by a previously

convicted felon in violation of section 571.070; and (Count V) class C felony of unlawful

possession of a firearm, .22 caliber Ruger semi-automatic rifle, by a previously convicted

felon in violation of section 571.070.

 On July 3, 2019, Mr. Smith filed a Motion to Suppress Physical Evidence

("Motion") requesting an order suppressing all of the physical evidence obtained from

Mr. Smith's mobile home on April 1, 2016, arguing that the initial search by Lieutenant

Smith and his fellow deputies was unlawful in that Mr. Smith did not voluntarily and

knowingly give consent to enter the mobile home, there were no exigent circumstances

justifying a search of the mobile home, and the protective sweep was not necessary for

 4
the deputies' protection. Mr. Smith further argued that because the initial search was

unlawful and provided the only basis for obtaining a search warrant, the admission of the

evidence obtained in the second search should be suppressed under the fruit-of-the-

poisonous-tree doctrine. On September 23, 2019, the trial court conducted a hearing on

the Motion and denied the Motion.

 On October 18, 2019, the State filed an Information in Lieu of Indictment

amending all counts of the previous indictment to charge Mr. Smith as a prior offender

under section 558.016. The trial court conducted a jury trial, and the jury returned a

guilty verdict on all counts. However, regarding Count II, Mr. Smith was convicted of

the lesser included offense of possession of more than thirty-five grams of marijuana.

Mr. Smith filed a Motion for a New Trial. The trial court overruled the Motion for a New

Trial and sentenced Mr. Smith to five eight-year terms of imprisonment to be served

concurrently. This appeal timely followed.

 Standard of Review

 We will reverse a trial court's ruling on a motion to suppress only if it is clearly

erroneous. State v. Lammers, 479 S.W.3d 624, 630 (Mo. banc 2016). "The trial court's

ruling will be deemed clearly erroneous if, after review of the entire record, this Court is

left with the definite and firm impression that a mistake has been made." Id. We

consider all evidence and reasonable inferences therefrom in the light most favorable to

the trial court's ruling, and we defer to the trial court's factual findings and credibility

determinations. Id. Whether conduct violates the Fourth Amendment is a question of

law, which we review de novo. Id.

 5
 Discussion

 In his only point on appeal, Mr. Smith argues the trial court erred in overruling his

Motion and allowing the introduction of all of the evidence seized because the evidence

was the fruit of an illegal search in that Mr. Smith was incapable of freely, voluntarily,

intelligently, and knowingly giving consent to Lieutenant Smith's entry into his mobile

home and no exception to the warrant requirement applied to allow the initial, warrantless

entry and search.

 Both the Fourth Amendment to the United States Constitution and article I, section

15 of the Missouri Constitution protect individuals from unreasonable searches and

seizures, and because these constitutional provisions are coextensive, "the same analysis

applies to cases under the Missouri Constitution as under the United States Constitution."

State v. Oliver, 293 S.W.3d 437, 442 (Mo. banc 2009). As a general rule, warrantless

searches are per se unreasonable and violate the Fourth Amendment. State v. Selvy, 462

S.W.3d 756, 768 (Mo. App. E.D. 2015). However, "[a] warrantless search pursuant to

consent voluntarily given is valid under the Fourth Amendment." Id. (citing State v.

Hyland, 840 S.W.2d 219, 221 (Mo. banc 1992); State v. Mathis, 204 S.W.3d 247, 258

(Mo. App. E.D. 2006)). Mr. Smith argues he did not freely and voluntarily consent to

Lieutenant Smith's entry into the mobile home and that Lieutenant Smith knew or should

have known that Mr. Smith lacked the capacity to consent.3 We disagree.

 3
 Mr. Smith relies extensively on this Court's analysis in State v. Pierce, No. WD78739, 2016 WL 6081444
(Mo. App. W.D. Oct. 18, 2016), however, that case was transferred to the Missouri Supreme Court in State v.
Pierce, 548 S.W.3d 900 (Mo. banc 2018). "The decision of the court of appeals in a case subsequently transferred
[to the Supreme Court] is of no precedential effect." Wilkendon P'ship v. St. Louis Cnty. Bd. of Equalization, 497
S.W.3d 873, 877 (Mo. App. E.D. 2016) (quoting Gerlach v. Mo. Comm'n on Hum. Rts., 980 S.W.2d 589, 594 (Mo.

 6
 When relying on consent to justify a warrantless search, the State has the burden

of proving the consent was freely and voluntarily given. Id.

 Consent is freely and voluntarily given if, considering the totality of the
 circumstances, the objective observer would conclude that the person
 giving consent made a free and unconstrained choice to do so. This
 determination involves a consideration of a number of factors, including,
 but not limited to, the number of officers present, the degree to which they
 emphasized their authority, whether weapons were displayed, whether the
 person was already in custody, whether there was any fraud on the part of
 the officers, and the evidence of what was said and done by the person
 consenting.

Id. (internal citations and quotations omitted).

 In U.S. v. Willie, 462 F.3d 892, 897 (8th Cir. 2006), the court held that an

individual under the influence of narcotics had capacity to consent to a search. 4 In that

case, Willie was approached by an officer in a motel parking lot because Willie was

loading boxes into a vehicle that was illegally parked in a fire lane. Id. at 894. The

officer observed that Willie was unable to stand still, smelled of anhydrous ammonia, and

had sores on his face, which is a common symptom of methamphetamine use. Id.

Another officer arrived at the scene and noticed a knife in Willie's pocket, and the officer

requested and obtained Willie's consent to remove it. Id. at 894-95. The officer also

discovered a cut straw in Willie's pocket that had a white residue on it, which later field-

tested positive for methamphetamine. Id. at 895. The officers arrested and handcuffed

App. E.D. 1998)). Therefore, Mr. Smith's reliance on Pierce, WD78739 is misplaced. Furthermore, neither Pierce
court reached the ultimate issue of whether Pierce lacked capacity to give consent; instead, the courts addressed only
whether the exclusionary rule applied if the court assumed Pierce lacked capacity. Pierce, 548 S.W.3d at 902;
Pierce, WD78739 at *6.
 4
 Though opinions of the United States Court of Appeals are not binding on this Court, they are persuasive.
Penzel Constr. Co.. v. Jackson R-2 Sch. Dist., 544 S.W.3d 214, 234 (Mo. App. E.D. 2017) (citing Buemi v.
Kerckhoff, 359 S.W.3d 16, 22 (Mo. banc 2011)).

 7
Willie, but did not read him his Miranda rights at that time. Id. The officers requested

consent to search Willie's hotel room, which he provided. Id. Willie filed a motion to

suppress, and the trial court denied the motion. Id.

 On appeal, the Eighth Circuit concluded that Willie's consent to search the motel

room was valid even though Willie may have been under the influence of

methamphetamine at the time of his arrest, because "the evidence [did] not suggest that

he was so intoxicated that he was not competent to understand the nature of his acts." Id.

at 896 (internal quotation omitted). He generally cooperated with police and responded

to their questioning. Id. The officers did not intimidate or make misrepresentations that

would give rise to a presumption of involuntary choice. Id. at 897. Willie was

handcuffed at the time he gave consent, but he had not been subjected to extended

questioning and had only been under arrest for a brief time. Id.

 Similarly, while Lieutenant Smith believed Mr. Smith was under the influence of a

narcotic because Mr. Smith was standing nude in cold weather, sprayed a deodorizer

randomly in the air, and answered questions with questions, the totality of the

circumstances indicates that Mr. Smith was cooperative and demonstrated he was able to

understand and comply with Lieutenant Smith's requests. When Lieutenant Smith

knocked on the door, Mr. Smith answered the door and voluntarily came outside onto his

deck. Further, Mr. Smith complied with Lieutenant Smith's requests to step off of the

deck and onto the ground and to raise his hands in order to be handcuffed. Mr. Smith

was not combative or violent. Given that Mr. Smith was nude and it was cold outside,

together with the fact Mr. Smith was covered in a clear slippery fluid, it was proper to

 8
request they wait inside rather than inside the patrol vehicle when Lieutenant Smith

feared that Mr. Smith may injure himself in the backseat or that it would become difficult

to address Mr. Smith's behavior if Mr. Smith became violent.

 Just as in Willie, the officers did not threaten or intimidate Mr. Smith by

brandishing weapons, nor did the officers engage in extensive questioning or fraudulent

conduct that would encourage Mr. Smith to allow entry into the mobile home. Further,

Mr. Smith was handcuffed briefly during the time it took for the ambulance to arrive and

transport Mr. Smith to the hospital. All of these facts support the trial court's finding that

the consent to enter the home was knowing and voluntary. Based on the totality of the

circumstances, Mr. Smith voluntarily consented to Lieutenant Smith's and the other

deputies' entry into his mobile home. Thus, the circuit court did not err, clearly or

otherwise, when it denied Mr. Smith's motion to suppress.5

 Conclusion

 We affirm.

 __________________________________
 Gary D. Witt, Judge

All concur

 5
 Mr. Smith does not challenge on appeal, and therefore we do not address, whether the "protective sweep"
conducted after the deputies gained entry to the mobile home was an unreasonable search.

 9