# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2348

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Mandel McDonald Benson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 14, 2012
Filed: July 11, 2012

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Mandel McDonald Benson challenges his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and the 235-month sentence the district court[1] imposed. We affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

I.

On December 15, 2009, Benson shoplifted from a Wal-Mart store in Bloomington, Minnesota. Officer Michael Utecht was in the proximity of the store and observed Benson, who matched the description of the suspected shoplifter, running away from the store. Officer Utecht yelled for Benson to stop. Instead of stopping, Benson ran faster, and Officer Utecht began pursuing Benson. Benson ran into the parking lot of a nearby strip mall. For two or three seconds, Officer Utecht lost sight of Benson as Benson ducked down between two cars. When he reappeared, Benson complied with Officer Utecht's orders to stop and place his hands on his head. After handcuffing Benson and placing him in the patrol car, Officer Utecht searched the area where he had lost sight of Benson and found a triangular nylon case containing a Ruger .357 revolver under one of the vehicles. Officer Utecht then took Benson back to the store for a "show-up identification," and a Wal-Mart employee identified Benson as the shoplifter. Based on his arrest, the police were able to obtain a search warrant to collect DNA evidence from Benson which additionally connected him to possession of the handgun.

On October 5, 2010, a grand jury indicted Benson on one count of being a felon in possession of a firearm. Prior to trial, Benson moved to suppress the DNA evidence as fruit of an unlawful seizure and arrest. The district court denied the motion, holding Officer Utecht had reasonable suspicion to detain Benson and to return him to Wal-Mart for the show-up identification. The district court also found that probable cause to arrest Benson existed once he was positively identified by the Wal-Mart employee.

The trial began on January 18, 2011, and was scheduled for no more than three days. After the jury was empaneled and the government had presented its case with the exception of a final witness, Benson requested that the court discharge Reynaldo Aligada, Jr., the Assistant Federal Public Defender who had been appointed to

represent Benson. The court cautioned Benson, but he insisted in proceeding pro se with Aligada as stand-by counsel. With the district court's permission, the government asked Benson a series of questions to determine whether his waiver of counsel was knowing, voluntary, and intelligent. The government asked Benson whether he understood that by proceeding pro se he would not be able to appeal his conviction on the basis that he did not have an attorney. Benson's response indicated that he did not understand, and he added, "I'm not going to understand it." Based on this response, the district court denied the request to dismiss Aligada as counsel. Benson continued his protest, clearly stating that he did not want Aligada to continue as his counsel. The court announced three options: (1) have Aligada continue as counsel, (2) appoint new counsel, which would require a delay in the trial, or (3) allow Benson to proceed pro se with Aligada as stand-by counsel. Before the court determined which option to adopt, Aligada moved to withdraw as counsel, asserting that the relationship between him and Benson had broken down and that a conflict existed between them. The court granted the motion and excused Aligada as counsel. Over the government's objections, the court appointed new counsel and continued the trial until February 8, 2011.

The district court appointed Leon Trawick to represent Benson. Trawick filed a motion for a mistrial, arguing that his introduction mid-trial undermined the fairness of the proceedings. He further argued that he intended to present a slightly different defense than Aligada had planned. The court denied the mistrial motion. As the date to resume trial approached, Trawick informed the court that he and Benson disagreed over trial strategy and that Benson was again contemplating proceeding pro se. At a status conference hearing the day before the trial was to resume, Benson requested permission to proceed pro se, and Trawick questioned Benson extensively about his request to proceed pro se, specifically focusing on Benson's waiver of a claim of ineffective assistance of counsel based on the pro se representation. Benson told the court, "I don't want this man [Trawick] representing me." The court reserved ruling on the request until the resumption of trial the following day. Before the jury

returned, Benson reiterated his desire to proceed pro se. The court granted the request, allowing Trawick to remain as stand-by counsel. As the jury returned, the court informed it that Benson would be representing himself. The government then called its final witness and rested its case. Benson offered an opening statement and proceeded to recall three witness and to call two additional witnesses. After closing arguments, the jury found Benson guilty of being a felon in possession of a firearm.

After the trial, Benson requested that Trawick be reappointed to represent him at sentencing. Despite the district court's grant of this motion, Benson filed multiple pro se motions and asked again, before sentencing, that he be allowed to proceed pro se. The court granted his request, and Benson proceeded pro se at the sentencing hearing. The district court denied Benson's request for a downward variance to 180 months, sentencing him instead to 235 months, which was the bottom of the applicable Sentencing Guidelines range.

## II.

With newly-appointed counsel, Benson appeals his conviction and sentence. First, he claims that the district court erred in denying his motion to suppress the DNA evidence obtained after his arrest. Second, he argues that his waiver of the right to counsel was not knowing, voluntary, and intelligent. Third, he argues that the district court should have granted his motion for mistrial. Fourth, he asserts the district court failed to set forth in the record sufficient explanation of the sentencing factors in 18 U.S.C. § 3553(a). In addition to the brief submitted by his appointed counsel, Benson has also submitted a pro se "supplement" to his appellate brief. Therein he raises five additional arguments.

A.

Benson argues that the DNA evidence tying him to possession of the handgun should have been suppressed as fruit of an unlawful detention or arrest.[2] After his arrest, the government obtained a search warrant to seize DNA from Benson. This DNA was compared to that found on the handgun, and the evidence was used at trial to show that Benson possessed the handgun. The district court denied the motion to suppress, holding that Benson's detention and arrest did not violate the Fourth Amendment. We review the district court's factual findings for clear error and its legal determination de novo. See United States v. Gaines, 639 F.3d 423, 427-28 (8th Cir. 2011).

The DNA that officers collected from Benson pursuant to a search warrant does not constitute fruit of the poisonous tree based on Benson's detention and arrest. First, Officer Utecht had a reasonable, articulable suspicion that Benson had just committed the shoplifting, and therefore Officer Utecht was justified in conducting the Terry stop of Benson. See Terry v. Ohio, 392 U.S. 1, 21 (1968). "Various behaviors and circumstances can contribute to, or be sufficient to provide, reasonable, articulable suspicion. For example, unprovoked flight at the sight of an officer can contribute to reasonable, articulable suspicion." United States v. Horton, 611 F.3d 936, 940 (8th Cir. 2010) (citing Illinois v. Wardlow, 528 U.S. 119, 124 (2000)), cert. denied, 131 S. Ct. 1032 (2011). "Also, a stop typically is justified when a suspect matches the description of a person involved in a disturbance near in time and

_____

[2]The district court found, and Benson does not challenge the finding, that the handgun was abandoned property and thus not subject to suppression for any alleged Fourth Amendment violation. See United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997) ("A warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment.").

location to the stop." Id. (citing United States v. Hicks, 531 F.3d 555, 558 (7th Cir. 2008)).

As the district court found, shortly after the shoplifting occurred, Officer Utecht spotted Benson, who matched the description of the alleged shoplifter, running away from the store. When Officer Utecht ordered Benson to stop, Benson instead increased his speed and sought to evade Officer Utecht. These articulable facts justify Officer Utecht's seizure of Benson to investigate whether he was involved in the shoplifting. Further, the placement of Benson in a patrol car and transporting of him back to the store for identification does not violate the Fourth Amendment. See United States v. Martinez, 462 F.3d 903, 908 (8th Cir. 2006) ("[T]he exigencies were such that the officers could not dispel their suspicions that had prompted the Terry stop until they transported Martinez back to the bank for the show-up identification."). Therefore, the district court properly denied the motion to suppress the DNA evidence later collected because Benson's stop and arrest did not violate the Fourth Amendment.

B.

The next issue on appeal is whether Benson's waiver of his right to counsel was knowing, intelligent, and voluntary. In his brief, Benson claims that his waiver of counsel was invalid because he did not make a clear and unequivocal request to proceed pro se. Instead, Benson argues, the court made the offer of self-representation in response to Benson's repeated questioning of Aligada's failure to employ a defense expert to challenge the government's DNA evidence. Benson contends that his request at that time to waive his right to counsel was instead a compulsion to accept the court's offer. Although the court considered Benson's request to proceed pro se, it chose instead to dismiss Aligada as counsel, continue the trial for several weeks, and appoint new counsel. Benson maintains that because he

was not unequivocal in his first request to proceed pro se, his second request to do so is necessarily invalid. We reject this argument.

"This court reviews de novo a district court's decision to allow a defendant to proceed pro se." United States v. Turner, 644 F.3d 713, 720 (8th Cir. 2011). Under the Sixth Amendment, a criminal defendant is guaranteed, subject to limitations, the right to the assistance of counsel; he is also guaranteed the right to represent himself. Faretta v. California, 422 U.S. 806, 818-21 (1975). "Before permitting a defendant to exercise the constitutional right to proceed pro se, the trial court must be satisfied that the waiver of counsel is knowing and voluntary." Turner, 644 F.3d at 720-21.

> In making the assessment of a waiver's validity, we look to the particular facts and circumstances in the case, including the background, experience, and conduct of the accused. Meyer v. Sargent, 854 F.2d 1110, 1114 (8th Cir. 1988). The "key inquiry," we have said, is "whether the accused was made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forgo the aid of counsel." Id. (internal quotations omitted). We will uphold a district court's grant of a defendant's motion to represent himself "if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self-representation." United States v. Patterson, 140 F.3d 767, 774-75 (8th Cir. 1998).

United States v. Kiderlen, 569 F.3d 358, 364 (8th Cir. 2009).

These requirements were met in this case. The court and the government warned Benson of the pitfalls of representing himself, including explicitly telling him that he would have to follow the Federal Rules of Evidence and the Federal Rules of Criminal Procedure. When Benson initially expressed some reservations about proceeding without counsel, the district court took the extraordinary step of continuing the trial for weeks so that Trawick could be appointed. When the trial

resumed, Benson again sought the dismissal of his appointed counsel, and he was clear and unequivocal in his desire to represent himself. Again, the district court explained the difficulties Benson would face, but despite these warnings, Benson was determined to have Trawick dismissed as counsel. See United States v. Taylor, 652 F.3d 905, 909 (8th Cir. 2011) ("[A] persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a knowing and voluntary waiver of counsel. In such an instance, the trial court may proceed to trial with the defendant representing himself." (quoting United States v. Moore, 706 F.2d 538, 540 (5th Cir. 1983))). The record reflects that Benson's decision to waive his right to counsel was knowing and voluntary, and therefore we uphold the district court's decision to allow Benson to represent himself at trial.

C.

Next Benson argues that the district court should have granted his mistrial motion. We review the denial of a motion for a mistrial for abuse of discretion. United States v. Weaver, 554 F.3d 718, 723 (8th Cir. 2009). We will affirm a district court's denial of a mistrial absent an "abuse of discretion resulting in clear prejudice." United States v. Koskela, 86 F.3d 122, 125 (8th Cir. 1996).

Benson argues that he was prejudiced by having Trawick appointed to the case halfway through the trial. He also claims Trawick's plan to follow a slightly different defensive theory than Aligada prejudiced him. First, we can find no case that holds the fact that counsel was substituted or dismissed mid-trial, in itself, necessarily results in prejudice to a criminal defendant, nor does Benson suggest any specific way he was prejudiced by Trawick's substitution. Second, even if it could be argued that Trawick intended to follow a different defensive theory, Trawick was never given the opportunity to present that theory because Benson again sought to proceed pro se before the trial resumed. Viewed from the position of the jury, after the weeks-long continuance, Benson began representing himself with Trawick as stand-by counsel.

-8-

As the district court held, there is nothing in the record to suggest that the continuance or allowing Benson to proceed pro se necessarily resulted in prejudice to Benson. Thus, the district court's denial of the mistrial motion was not an abuse of its considerable discretion.

D.

The final argument presented in the counseled brief is that the district court failed to set forth enough reasons justifying the 235-month sentence to permit review by this court. This argument raises an issue of alleged procedural error that was not raised to the district court. Accordingly, our review is for plain error. See United States v. Nissen, 666 F.3d 486, 490 (8th Cir. 2012). The 235-month sentence imposed by the district court was at the bottom of the properly calculated Guidelines range. "[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." Rita v. United States, 551 U.S. 338, 356-57 (2007). In this case, the district court considered the presentence report, heard arguments by Benson, took evidence, and referenced section 3553(a). Although the district court did not recite every section 3553(a) factor, the court did state that it had "taken into account the nature and circumstances of the instant offense, as well as the history and characteristics of the defendant, and [found] that the sentence imposed is sufficient but not greater than necessary to afford adequate deterrence to future criminal conduct." (Sent. Tr. at 60.) "If a district court references some of the considerations contained in § 3553(a), we are ordinarily satisfied that the district court was aware of the entire contents of the relevant statute." See United States v. Gray, 533 F.3d 942, 944 (8th Cir. 2008) (quotation omitted). The district court committed no procedural error at sentencing.

E.

Finally, Benson has tendered a pro se supplemental brief for consideration by this panel.  It is Eighth Circuit policy not to address issues raised by a defendant in pro se filings with this Court when he is represented by counsel.  United States v. Halverson, 973 F.2d 1415, 1417 (8th Cir. 1992) (per curiam).  Nevertheless, we grant Benson's motion to file the pro se supplemental brief.  We have reviewed this pro se filing and find his additional arguments meritless.

III.

Accordingly, we grant Benson's request to file the pro se supplemental brief, and we affirm Benson's conviction and sentence.

_____