# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3592

_____

United States of America

*Plaintiff - Appellee*

v.

Gerald Wayne LeBeau

*Defendant - Appellant*

_____

No. 15-3653

_____

United States of America

*Plaintiff - Appellee*

v.

Neil Thomas LeBeau

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: February 9, 2017
Filed: August 14, 2017
_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Following trial, a jury convicted Gerald Wayne LeBeau (Gerald) of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and convicted Gerald and his son Neil Thomas LeBeau (Neil) of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, and conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846. Gerald and Neil each appeal on various grounds. We affirm.

## I. Background

On January 10, 2014, Gerald was staying at Cadillac Jack's Gaming Resort, a hotel and casino in Deadwood, South Dakota. During Gerald's stay, federal agents searched his hotel room and car. The agents discovered cocaine in the car, and arrested Gerald. According to the government, Gerald and Neil had been running an operation in which they and their associates purchased cocaine and marijuana to distribute at the Pine Ridge Indian Reservation. The government contends Gerald continued to direct the operation after his arrest by using jail telephones to speak with Neil and other associates in coded language. The jail telephone system records all calls placed by inmates.

Gerald was indicted for possession with intent to distribute cocaine, and both Neil and Gerald were indicted for conspiracy to distribute cocaine and conspiracy to

distribute marijuana. A superseding indictment additionally charged Gerald with attempted witness tampering, but the count was later dismissed. Gerald was appointed counsel, and filed a motion to suppress evidence seized from the searches of his hotel room and car. Before a hearing was held on that motion, Gerald's appointed attorney (the fourth to represent Gerald in relation to the case) moved to withdraw without substitution based on Gerald's expressed desire to represent himself.

Before ruling on the motion to withdraw, the magistrate judge[1] held an evidentiary hearing on the suppression motion. At the beginning of the hearing, and several times throughout the hearing, Gerald told the court he did not want his attorney to represent him. The magistrate judge advised Gerald that the suppression hearing would proceed with counsel, followed by a separate ex parte hearing on Gerald's request to represent himself. At the ex parte hearing, the magistrate judge informed Gerald that he had a right to represent himself, but advised Gerald that doing so would be an unwise decision. Gerald ultimately decided not to represent himself. The magistrate judge allowed Gerald's attorney to withdraw, and explained to Gerald that his new attorney would be permitted to introduce additional evidence related to the suppression motion. After the hearing, current counsel was appointed to Gerald's case. Before trial, Gerald moved to remove his current counsel as well, but during an ex parte hearing on the motion, informed the court that he wanted to withdraw his request and have his current attorney continue to represent him.

Through his new counsel, Gerald filed additional motions to suppress, including, *inter alia*, a second motion to suppress evidence seized from the hotel room and car and a motion to suppress the recordings of his telephone calls.[2] Neil

---

[1]The Honorable John E. Simko, United States Magistrate Judge for the District of South Dakota.

[2]The parties also filed numerous other pretrial motions; we omit discussion of several that are not relevant to this appeal.

moved to join some of Gerald's motions, and also filed his own pretrial motions, including, *inter alia*, a motion to exclude a prior conviction and a motion to suppress the recordings of the telephone calls. After an additional evidentiary hearing, the magistrate judge[3] recommended that the motions to suppress be denied, and the district court[4] adopted the recommendation. Gerald also filed a motion to dismiss the superseding indictment, on the grounds that the government failed to preserve video surveillance recordings from Cadillac Jack's, which Gerald asserted contained exculpatory evidence. The district court denied the motion. Gerald and Neil also filed motions to sever their trials, which the district court denied. Finally, the government moved to quash several of Gerald's subpoenas directed to witnesses who purportedly had information about the investigation the agents conducted at Cadillac Jack's. The district court granted those motions at the first pretrial conference.

The case proceeded to trial. However, Gerald and Neil disrupted the proceedings, and the district court declared a mistrial. A new trial was scheduled, and the district court held a second pretrial conference. Gerald interrupted the conference to inform the court he had filed a lawsuit against the judge and the prosecutor, and to request their recusal. The court declined, and reminded Gerald that he was required to remain silent when not on the witness stand, because his attorney was "the person that speaks for you here in court." Gerald replied, "I can represent myself." The court did not respond, and resumed discussion of the motion in limine before it. During the second pretrial conference, the district court also reaffirmed the rulings issued during the first pretrial conference, including its grant of the government's motions to quash.

---

[3]The Honorable Daneta Wollman, United States Magistrate Judge for the District of South Dakota.

[4]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

-4-

At the second trial, the government introduced testimony that agents found cocaine in Gerald's car, but did not introduce testimony about or evidence obtained from the hotel room. Several of Gerald and Neil's former associates testified about their roles in the drug operation. Other witnesses testified that they purchased drugs from Gerald or Neil. Additionally, the government introduced ninety-one recordings of Gerald's calls from jail telephones and their corresponding transcripts. Witnesses identified the speakers and content of the calls, and explained the coded language used in the calls. Ultimately, both defendants were found guilty. Gerald was sentenced to 324 months' imprisonment for possession with intent to distribute cocaine and conspiracy to distribute cocaine and 120 months for conspiracy to distribute marijuana, to run concurrently, and was assessed a $3,000 fine. Neil was sentenced to 120 months on both counts, to run concurrently. Each appeals.[5]

## II. Discussion

## A.    Gerald's Appeal

Gerald appeals his convictions on the grounds that the district court erred by: (1) denying his motions to suppress evidence obtained during the searches of his hotel room and car; (2) not allowing him to represent himself; (3) not allowing him to present the full scope of his defense; (4) denying his motion to dismiss the superseding indictment based on the government's failure to preserve evidence; and

---

[5]In addition to the arguments advanced by counsel, Neil and Gerald filed several pro se motions and briefs challenging various aspects of the proceedings below. Neil has also moved to join motions and briefs filed by Gerald. "It is Eighth Circuit policy not to address issues raised by a defendant in pro se filings with this Court when he is represented by counsel." United States v. Benson, 686 F.3d 498, 504–05 (8th Cir. 2012). However, we have examined the defendants' pro se filings and find their additional arguments meritless. See id. Accordingly, we grant Neil's motions to join, see Fed. R. App. P. 28(i), and deny the remaining motions.

(5) denying his motion to suppress the recordings of the telephone calls he made from jail. He also appeals his sentence, arguing that the district court erred in applying sentencing enhancements that were not proven beyond a reasonable doubt.

**1.      Denial of motions to suppress evidence seized from searches of hotel room and car**

First, Gerald challenges the denial of his two motions to suppress evidence obtained during the searches of his hotel room and car. "We review the denial of a motion to suppress de novo but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." United States v. Corrales-Portillo, 779 F.3d 823, 829 (8th Cir. 2015) (quoting United States v. Clutter, 674 F.3d 980, 982 (8th Cir. 2012)). "We affirm . . . unless the district court's decision is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." Id. (alteration in original) (quoting United States v. Wallace, 713 F.3d 422, 426 (8th Cir. 2013)).

The magistrate judge found, and the district court adopted as supplemented, the following facts relating to Gerald's motions to suppress. On January 10, 2014, Special Agent Jeff Youngblood of the Federal Bureau of Investigation (FBI) executed a search warrant for a hotel room at Cadillac Jack's that a federal fugitive, Lloyd Nickel, had been staying in prior to his apprehension. During the execution of the warrant, the hotel manager, Tim Atyeo, informed Youngblood that the woman who had accompanied Nickel was still in the hotel and had been seen with Gerald. Hotel staff believed her name was Jessica Fields. Youngblood contacted Special Agent Dan Cooper, who informed Youngblood that Gerald had a criminal history involving narcotics. Cooper and two other agents, Lyle Tolsma and Shawn Sheridan, went to Cadillac Jack's to assist Youngblood. After reviewing hotel surveillance videos, the agents believed the woman had gone into Gerald's hotel room.

The agents requested hotel staff to telephone Gerald's room and ask him to step outside to speak with the manager, while Atyeo stood outside Gerald's door. When Gerald opened the door, the agents asked him to step outside, handcuffed him, and patted him down. Tolsma removed keys and a wallet from Gerald's pants pocket. The agents also detained Gerald's brother, Marlin LeBeau, who had been walking down the hallway when the agents approached the room. Tolsma used a digital recording device to document the agents' conversations with Gerald and Marlin, but the audio is of poor quality. According to the agents, they informed Gerald they needed to speak to the woman in the room. They testified that Gerald called out for "Katrina" and indicated that the officers could go ahead. Tolsma knocked on the door, which was slightly ajar, and the woman responded, "Hello?" Tolsma pushed the door open, and he and Sheridan entered the room. Tolsma asked the woman for identification, and discovered that her name was actually Tyra Smith. While Tolsma spoke with Smith, Sheridan conducted a brief "sweep" to see if anyone else was in the hotel room, and observed a bag of white powder in plain view on a counter by the sink.

Smith was taken to another room to be interviewed. Then, the agents brought Gerald and Marlin into Gerald's hotel room and moved Gerald's handcuffs to the front of his body. Tolsma recorded their conversation with the digital recorder. Tolsma told Gerald that he was not under arrest, that he did not have to speak with them, and that they were there to identify the woman in the room. Gerald explained how he met the woman and why she was in his room. Then, Tolsma asked Gerald for written consent to search his hotel room. According to Tolsma and Sheridan, Gerald agreed and signed a consent form. The digital recorder stopped working during this exchange because the battery popped out. When Tolsma discovered the malfunction, he replaced the battery and asked Gerald to verbally confirm on the recording that he had consented to the search, which Gerald did. Approximately forty minutes later, while the agents were searching the room, Tolsma asked Gerald for consent to search his car, and Gerald agreed. His verbal agreement to the search of the car was audio-

recorded, but he did not sign a new consent form. Syringes and a small amount of cocaine were discovered in the hotel room, and four ounces of cocaine were discovered in the car. After finding the cocaine in the car, Cooper placed Gerald under arrest.

For clarity, we will refer to the agents' initial entry into the hotel room, including Tolsma's sweep of the hotel room, as the "initial entry," and to the full search of the room, purportedly conducted pursuant to Gerald's written consent, as the "search." In his motions to suppress, Gerald argued that the agents' initial entry into the hotel room, and subsequent searches of the room and car, were unconstitutional. The district court adopted the magistrate judge's recommendation to deny Gerald's motions to suppress, finding that Gerald voluntarily consented to the searches of his hotel room and car, and that, even assuming the initial entry was unconstitutional, Gerald's consent to the searches of the hotel room and car purged the taint of the violation.

As we understand the basis of Gerald's appeal regarding the motions to suppress, it can be distilled into three distinct arguments. First, he contends that the district court clearly erred in finding that he voluntarily consented to the searches of his hotel room and car. Second, he argues that the agents' initial entry into the hotel room was unconstitutional, and that evidence obtained from the searches of the hotel room and car should have been suppressed as fruit of the poisonous tree. Third, he argues that Tolsma illegally seized his wallet and keys after patting him down outside the hotel room.

### a. Consent to searches of hotel room and car

Gerald argues the district court clearly erred when it found that he voluntarily consented to the searches of the hotel room and car.[6] "The government bears the burden of proving voluntary consent to a search by a preponderance of the evidence and we review a district court's finding of voluntary consent under a clear error standard." United States v. Willie, 462 F.3d 892, 896 (8th Cir. 2006) (internal citations omitted).

First, Gerald challenges the district court's finding that he consented to the searches of the hotel room and car at all. Gerald points out that during the suppression hearing, his handwriting expert, Wendy Carlson, opined that the signature on the consent form for the search of the hotel room was not Gerald's, and that it was highly probable Tolsma had forged it. Gerald contends that the district court improperly rejected Carlson's opinion because she, unlike the government's handwriting expert, was not an FBI employee. He also contends that there is no evidence he consented to the search of the car.

In finding that Gerald signed the consent form, the district court noted that the government's handwriting expert called Carlson's methodology into question, that the government impeached Carlson's qualifications, that Tolsma and Sheridan both

_____

[6]We note that the government did not introduce at trial any testimony about or evidence obtained from the hotel room. Thus, even if the district court erred in not suppressing evidence obtained during the search of the hotel room, such error was harmless. See United States v. Turner, 781 F.3d 374, 391 (8th Cir. 2015). Accordingly, Gerald's challenge to the district court's finding that he voluntarily consented to the search of the hotel room is relevant only insofar as it may affect the validity of the search of the car. Because we conclude the district court did not clearly err in finding that Gerald voluntarily consented to the search of the hotel room, however, we need not reach the question of whether a contrary conclusion would affect the validity of the search of the car.

testified that Gerald signed the form, and that Gerald verbally confirmed on the audio recording that he signed the form. The district court further noted that although Gerald did not sign a separate consent form for the search of the car, Tolsma and Sheridan testified that Gerald verbally consented to the search of the car, Gerald's verbal consent to the search of the car was captured on the audio recording, and Gerald subsequently stated in a recorded telephone call from jail that he consented to the search of the car.

Under these circumstances, we cannot say the district court committed clear error in finding Gerald consented to the searches of the hotel room and car. The court's written order explains that it discounted Carlson's testimony not because she was not an FBI employee, but because her testimony was inconsistent with the other evidence presented, including the testimony of Tolsma and Sheridan. It was not clear error for the court to credit this evidence over Carlson's expert opinion. See Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."). Additionally, Gerald's own contemporaneous and subsequent statements provide evidentiary support for the court's conclusion that he consented to the searches. Accordingly, the court did not err in finding Gerald consented to the searches of his hotel room and car.

Next, Gerald argues that even if he did consent to the searches, his consent was not voluntary because he was handcuffed and in custody at the time of consent and had not been given Miranda warnings. "The question of voluntariness requires a broad factual inquiry; there is no bright-line rule to determine when an 'essentially free and unconstrained choice,' becomes one that is 'the result of duress or coercion.'" Willie, 462 F.3d at 896 (internal citations omitted) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225, 248 (1973)). Rather, we consider whether consent

-10-

is voluntary based on the totality of the circumstances, "including a defendant's age, intelligence, and education; whether he cooperates with police; his knowledge of his right to refuse consent; and his familiarity with arrests and the legal system." United States v. Bearden, 780 F.3d 887, 895 (8th Cir. 2015). "Also relevant is the environment in which consent was given and whether the police threatened, intimidated, punished, or falsely promised something to the defendant; whether the defendant was in custody or under arrest when consent was given and, if so, how long he had been detained; and whether consent occurred in a public or secluded area." Id.

We conclude the district court did not err in finding that Gerald's consent to the searches was voluntary. Although the facts that Gerald was handcuffed and was not given Miranda warnings weigh in Gerald's favor, other facts support the court's finding of voluntariness: The agents did not threaten or intimidate Gerald, the agents told Gerald that he was not under arrest and that they wanted to ask him questions about the woman in his room, the agents informed Gerald that he did not have to speak with them, Gerald was cooperative with the agents and engaged them in conversation, and Gerald had prior experience with the legal system. Based on the totality of the circumstances, we cannot say the district court clearly erred in finding Gerald's consent was voluntary. See id. (concluding that the district court did not err in finding the defendant voluntarily consented to a search even though he was handcuffed in a secluded area and had not yet been read Miranda warnings, because other circumstances supported the court's finding).

### b.     Fruit of the poisonous tree

Gerald next argues that the district court should have granted his motions to suppress on the grounds that the agents' initial entry into the hotel room was unconstitutional. He contends that he did not voluntarily consent, explicitly or implicitly, to the agents entering the hotel room, and that even if he did, Tolsma's

-11-

sweep of the hotel room exceeded the scope of consent. In Gerald's view, the subsequent searches of the hotel room and car were the fruit of the purportedly illegal initial entry because the white powder Tolsma observed during the sweep led the agents to ask Gerald for consent to search the hotel room and car.

As explained in a footnote above, even if the district court erred in not suppressing evidence obtained from the hotel room, the error was harmless because the government offered at trial no evidence obtained during the search. Thus, we need consider only whether the district court erred in not suppressing evidence obtained from the search of the car based on the agents' initial entry into the hotel room. We will assume for the purposes of our analysis that the initial entry into the hotel room was unconstitutional, and consider whether the evidence obtained during the search of the car was fruit of the poisonous tree. See United States v. Barnum, 564 F.3d 964, 969 (8th Cir. 2009) (assuming a Fourth Amendment violation in determining whether the defendant's subsequent consent to search purged its taint).

"[T]he exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and . . . 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016) (quoting Segura v. United States, 468 U.S. 796, 804 (1984)). However, courts will not exclude evidence discovered as a result of an illegal search or seizure "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance." Id.

Consent can be an intervening circumstance if the government shows "(1) that the defendant's consent was voluntary and (2) that 'the consent was an independent act of [the defendant's] free will that purged the taint of the Fourth Amendment violation.'" United States v. Whisenton, 765 F.3d 938, 941 (8th Cir. 2014) (alteration in original) (quoting United States v. Greer, 607 F.3d 559, 564 (8th Cir. 2010)). As

-12-

explained above, the district court did not err in finding that Gerald voluntarily consented to the search of the car. Thus, the question is whether that consent purged the taint of the purported Fourth Amendment violation. To determine whether consent has purged the taint of a Fourth Amendment violation, courts consider: "(1) the temporal proximity between the Fourth Amendment violation and the grant of consent to search; (2) the presence of any intervening circumstances; and (3) the purpose and flagrancy of the agents' Fourth Amendment violation." Id. (alterations omitted) (quoting Barnum, 564 F.3d at 971).

"We measure temporal proximity from the point at 'which the agents' conduct became illegal to the time of the consent.' The closer in time the illegal entry and the defendant's consent occurred, the more likely the illegal entry influenced the consent." Id. (internal citation and alterations omitted) (quoting United States v. Esquivel, 507 F.3d 1154, 1160 (8th Cir. 2007)). In some circumstances, even a lapse of fifteen minutes can be "sufficient to demonstrate an attenuation of the illegality." Id. at 942. Here, a much longer period of time—at least forty minutes—elapsed between the conclusion of the agents' initial entry into the hotel room and Gerald's consent to the search of the car.

"The presence of intervening circumstances that provide the defendant an opportunity 'to pause and reflect, to decline consent, or to revoke consent' help demonstrate that the illegality was attenuated." Id. (quoting Greer, 607 F.3d at 564). Here, several events occurred between the initial entry and the consent to the search of the car: The agents moved Gerald's handcuffs from his back to his front, informed him that he was not under arrest and did not have to talk to them, told him that they wanted to ask him questions about the woman in his hotel room, asked him for written consent to search the hotel room, and finally, searched the hotel room after he gave his written consent. These events afforded Gerald a meaningful chance to reflect on his options.

-13-

Finally, "[t]he Supreme Court has placed 'particular' emphasis on the purpose and flagrancy of the official misconduct." Greer, 607 F.3d at 564. In evaluating this factor, courts consider whether the violation was "investigatory in design and purpose," and whether the officers used force, threats, or intimidation. Whisenton, 765 F.3d at 942 (quoting Barnum, 564 F.3d at 973). Here, the agents' initial entry into the hotel room had an investigatory purpose: to interview Smith. However, the agents used no force, threats, or intimidation to enter the room; rather, they entered through the partially open door.

Weighing these factors, we conclude that Gerald's voluntary consent to the search of the car was the product of free will sufficient to purge the taint of the agents' presumed illegal initial entry into the hotel room. Accordingly, the district court did not err in denying Gerald's motions to suppress evidence obtained during the search of the car as fruit of the poisonous tree.[7]

### c. Seizure of wallet and keys

Gerald also contends that Tolsma illegally seized his wallet and keys after patting him down in the hallway. Gerald did not raise this issue below, and has not offered any reason for his failure to do so. As a result, this issue is not properly before us. See United States v. Cooke, 853 F.3d 464, 474 (8th Cir. 2017) (defendant waived even plain error review of admission of evidence when the basis for a motion to suppress "was reasonably available to her before trial, and she has not shown good

---

[7]Gerald also suggests that all evidence the government obtained after his arrest is fruit of the poisonous tree, because "[i]f not for the illegal search of his hotel room, leading to the search of his car, LeBeau would not have been arrested and jailed, leading to jail phone calls that created the bulk of the case." Because we have already concluded Gerald's consent to the search of the car was an intervening circumstance, we also conclude that evidence obtained after his subsequent arrest is not fruit of the purportedly illegal initial entry.

-14-

cause for her failure to move to suppress . . . at that time"); see also Fed. R. Crim. P. 12(b)(3)(C), (c)(3).

In sum, the district court did not err in denying Gerald's motions to suppress evidence obtained during the searches of the hotel room and car.

**2.      Denial of permission for Gerald to represent himself**

Next, Gerald contends that the district court erred in not granting his requests to represent himself at the first suppression hearing and at the second pretrial conference. We review de novo a district court's determination whether to permit a defendant to proceed pro se. United States v. Washington, 596 F.3d 926, 935 (8th Cir. 2010).

First, Gerald suggests that the magistrate judge erred in "forcefully attempt[ing] to talk him out of" representing himself during the ex parte hearing on his request to proceed pro se. A defendant has a constitutional right to represent himself in a criminal case. Faretta v. California, 422 U.S. 806, 832 (1975). However, that right is "not absolute." United States v. Tschacher, 687 F.3d 923, 931 (8th Cir. 2012). "Before permitting a defendant to exercise the constitutional right to proceed pro se, the trial court must be satisfied that the waiver of counsel is knowing and voluntary." United States v. Turner, 644 F.3d 713, 720–21 (8th Cir. 2011). "Warnings of the pitfalls of proceeding to trial without counsel must be rigorously conveyed." Id. (alterations omitted) (quoting Iowa v. Tovar, 541 U.S. 77, 89 (2004)).

Here, the magistrate judge told Gerald during the hearing that his decision to represent himself "must be a knowing and voluntary decision," and that Gerald "need[ed] to be fully aware of the hazards and disadvantages of representing [him]self." The magistrate judge asked Gerald about his knowledge of the charges, his possible sentence, the Sentencing Guidelines, the Federal Rules of Evidence, and

the Federal Rules of Criminal Procedure. The magistrate judge warned Gerald, *inter alia*, that he would "be up against somebody who has been to law school" and that if Gerald represented himself, he would be "on [his] own" and the rules would not be relaxed for his benefit. It concluded by "strongly urg[ing]" Gerald not to represent himself. Gerald responded, "I'll take your advice," and informed the court that he wanted to be represented by a lawyer. The magistrate judge's warnings were appropriate to fulfill the court's obligation to ensure that Gerald's waiver of counsel was knowing and voluntary, and it was not error to convey them.

Second, Gerald contends that his statement, "I can represent myself" during the second pretrial conference constituted a request to proceed pro se, which the district court erroneously ignored. To invoke the right to self-representation, a defendant must make a "clear[] and unequivocal[]" request. Reese v. Nix, 942 F.2d 1276, 1281 (8th Cir. 1991). We apply a "reasonable person" standard to determine whether a defendant has made an unequivocal request to proceed pro se. Id. "Under this approach a criminal defendant must 'do no more than state his request to proceed pro se, either orally or in writing, unambiguously to the court so that no reasonable person can say the request was not made.'" Id. (alteration and emphasis omitted) (quoting Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir. 1986)).

Here, a reasonable person could conclude that Gerald's statement was not an unequivocal request to proceed pro se. As described above, Gerald's statement "I can represent myself" followed his interruption of the second pretrial conference. The district court told Gerald, "You can only speak if you are on the witness stand under oath. Other than that, you need to stay silent." Gerald responded that he and Neil had filed a lawsuit against the judge and the prosecutor and was seeking their recusal. After Gerald described the lawsuit at some length, the following exchange occurred:

> THE COURT: Well, I am not recusing myself today. I want you to be aware that you can only speak if you are called as a witness and you are

up here on the witness stand. Other than that, you need to sit here and be silent. You have an attorney that's representing you. He's the person that speaks for you here in court.

DEFENDANT GERALD LEBEAU: I can represent myself.

THE COURT: Going back to the motion dealing with the Margaret Clark residence in Pine Ridge. . . .

The circumstances of this case are similar to those presented in Nix, where, after the defendant's request for new counsel was denied, he stated, "Well, I don't want no counsel then." Id. at 1281. There, we concluded that given the context of the defendant's statement, "a reasonable person could have concluded that [he] was merely expressing his frustration and not clearly invoking his right to self-representation." Id. Here, similarly, a reasonable person could have concluded that Gerald's statement, viewed in context of the exchange as a whole, was not a clear request to represent himself, but an impulsive attempt to circumvent the court's instruction to be silent. Accordingly, because Gerald did not unequivocally invoke his right to self-representation, the district court did not violate such right.

### 3. Grant of motions to quash

Next, Gerald argues that the district court erred in "denying [him] the right to present the full scope of his defense," in violation of the Fifth Amendment Due Process Clause and Sixth Amendment Confrontation Clause. As we understand his argument, Gerald is appealing the district court's grant of the government's motions to quash the subpoenas of several witnesses whom Gerald planned to call to testify about the investigation at Cadillac Jack's. These witnesses include Sheridan, Tolsma, Youngblood, Atyeo, Smith, Nickel, Carlson, Michael Tom (an FBI agent involved in the investigation of Nickel), Jacob Bohlman and Ashley Handran (employees of Cadillac Jack's), Renee Fields (the mother of Jessica Fields), and personnel at

-17-

driver's license bureaus in North Dakota and Texas. We review the grant of a motion to quash a Rule 17(b) subpoena for abuse of discretion. See United States v. Jackson, 67 F.3d 1359, 1367 (8th Cir. 1995).

Federal Rule of Criminal Procedure 17(b) provides: "Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows . . . the necessity of the witness's presence for an adequate defense." Though we have not previously considered what standard governs a district court's decision to grant a motion to quash a subpoena issued under Rule 17(b), we agree with the Fifth Circuit that "the same considerations bearing on the grant of such a subpoena apply to a motion to quash." United States v. Pitts, 569 F.2d 343, 349 n.10 (5th Cir. 1978); see United States v. Pursley, 577 F.3d 1204, 1229 (10th Cir. 2009) (analyzing a court's grant of a motion to quash under Rule 17(b)'s standards of issuance). Thus, when faced with a motion to quash, the defendant has the burden to show that the witness whose presence he seeks is necessary for an adequate defense, and the trial court has "wide discretion" in determining whether the defendant has met that burden. See United States v. Wyman, 724 F.2d 684, 686 (8th Cir. 1984) (explaining the standards a trial court should apply in deciding whether to issue a Rule 17(b) subpoena).

Here, the government moved to quash the subpoenas of the above-listed witnesses on the grounds that none had relevant testimony to offer. In response, Gerald explained that he intended to elicit testimony from the witnesses that the agents falsely identified Smith as Jessica Fields, forged Gerald's signature on the consent form, and failed to preserve surveillance videos from Cadillac Jack's. Gerald argued that this testimony was relevant to establish that the agents framed him by using a ruse to gain access to his hotel room, falsely claiming he consented to the search of his hotel room and car, and planting cocaine seized from Nickel's hotel room in his car.

In granting the motions to quash the subpoenas, the district court noted that whether Gerald voluntarily consented to the searches was a matter for the court, not the jury. See United States v. Watson, 459 F.2d 588, 591 (8th Cir. 1972) ("The existence and voluntariness of consent to a search by government agents are questions of fact for determination by the district judge."). The court further observed that the proposed testimony had only a "tenuous" connection to the theory that the agents planted cocaine in Gerald's car, and that its probative value would be substantially outweighed by the risk of unfair prejudice that would result from holding a "mini trial on the evidence from the hotel room." See Fed. R. Evid. 403.

Gerald argues that the district court's ruling was erroneous because the testimony he sought to elicit had relevance beyond the question of voluntariness. In support of this argument, Gerald points to Crane v. Kentucky, 476 U.S. 683 (1986). In Crane, the trial court excluded evidence of the circumstances of the defendant's confession to law enforcement, reasoning that whether the confession was voluntary was a question of admissibility for the trial court, not the jury. Id. at 686. The Supreme Court reversed, explaining that although the circumstances of the confession were "relevant to the purely legal question of its voluntariness . . . . the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence." Id. at 688–89.

However, this case is distinguishable from Crane because Gerald has not established that the circumstances of his consent to search his hotel room and car are probative of his factual guilt or innocence, independent of the legal question of voluntariness. To the extent the proposed testimony would establish that the agents used a ruse to enter the hotel room or falsified Gerald's consent to the search of the hotel room or car, neither fact would make it more or less likely that Gerald is guilty of the crimes of which he was convicted. Further, we agree with the district court that the proposed testimony has only minimal relevance to Gerald's theory that the agents

-19-

planted the cocaine found in his car, and that its probative value was substantially outweighed by the risk of unfair prejudice. See Fed. R. Evid. 403. Because the proposed testimony would have been either irrelevant or inadmissible, we conclude that the district court did not abuse its discretion in determining that the witnesses Gerald sought to subpoena were not necessary for an adequate defense. See Jackson, 67 F.3d at 1367 (the district court's grant of a motion to quash not an abuse of discretion where testimony "would have been irrelevant to [the defendant's] factual guilt or innocence"); United States v. Chapman, 954 F.2d 1352, 1361–62 (7th Cir. 1992) (denial of a Rule 17(b) subpoena not an abuse of discretion where the testimony would have been irrelevant or inadmissible).

### 4.    Denial of motion to dismiss based on due process

Gerald next argues that the government's failure to preserve the video surveillance recordings from Cadillac Jack's from the night of his arrest violated his rights under the Fifth Amendment Due Process Clause. Law enforcement's failure to preserve potentially exculpatory evidence violates due process if the defendant can show that law enforcement acted in bad faith. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Additionally, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489 (1984).

Gerald argues that the video was potentially exculpatory because it would likely have shown that the officers tricked him into opening the hotel room door by hiding and positioning the hotel manager in front of the door; that Tyra Smith is not Jessica Fields; and that one of the agents prevented the hotel room door from latching closed after Gerald exited the room. As explained above with respect to the district court's grant of the government's motions to quash, Gerald's contention that the agents used a ruse to gain entry to his hotel room is not probative of his factual guilt

or innocence. Accordingly, the video surveillance recordings would have had no apparent exculpatory value, and the government did not violate Gerald's due process rights by not preserving them.

### 5. Admission of telephone recordings

Next, Gerald contends that the district court erred in admitting recordings of his jail telephone calls because the government did not lay sufficient foundation for them. We review the court's decision to admit the recordings for abuse of discretion. United States v. Roach, 28 F.3d 729, 732–33 (8th Cir. 1994).

In United States v. McMillan, 508 F.2d 101 (8th Cir. 1974), the Eighth Circuit set forth the following requirements to lay a proper foundation for electronic recordings:

(1)    That the recording device was capable of taking the conversation now offered in evidence.
(2)    That the operator of the device was competent to operate the device.
(3)    That the recording is authentic and correct.
(4)    That changes, additions or deletions have not been made in the recording.
(5)    That the recording has been preserved in a manner that is shown to the court.
(6)    That the speakers are identified.
(7)    That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

Id. at 104. Gerald contends that the government did not meet the first four of these requirements because no representative of the company that records the jail telephone calls testified, no one who downloaded the recordings onto CDs testified, and no one testified as to the recording quality of the CDs. We disagree.

-21-

The government satisfied the first two <u>McMillan</u> requirements simply by producing the recordings. With respect to the first requirement, "the very fact of the existence of the . . . recordings establishes that the recording devices were capable of picking up sounds." <u>United States v. Moss</u>, 591 F.2d 428, 433 (8th Cir. 1979). Similarly, with respect to the second <u>McMillan</u> requirement, "[t]he [recording]'s existence also demonstrates that the individual who made the [recording] was sufficiently skilled in the operation of the recording equipment." <u>Roach</u>, 28 F.3d at 733.

The government satisfied the third and fourth requirements through the testimony of Pennington County Jail Captain Robert Yantis and Cooper. Yantis testified about the automated system that records the calls. He testified that the information recorded by the system is maintained indefinitely, is accessible only by jail personnel and law enforcement, cannot be altered within the system, and has never been found to be faulty or inaccurate. Cooper testified that the CDs provided to the court contained the same recordings that the internet system contained, and that he did not make any alterations to the recordings except for redactions pursuant to court order. This testimony is sufficient to establish that the recordings are authentic and correct and that no changes were made to the recordings except as authorized by the court. <u>McMillan</u>, 508 F.2d at 104. Because the government met the first four <u>McMillan</u> requirements, and Gerald does not dispute that the government otherwise laid adequate foundation, we conclude that the district court did not err in admitting the recordings of the jail telephone calls.

### 6. Application of sentencing enhancements

Finally, Gerald argues that his sentence is unconstitutional because the court increased his advisory sentencing range under the United States Sentencing Guidelines based on several facts that the jury did not find beyond a reasonable doubt, including the quantity of cocaine involved in the conspiracy, Gerald's criminal

history, and the offense characteristics.  Increasing a defendant's sentence based on facts found by a judge by a preponderance of the evidence "violate[s a defendant's] rights only if the sentence exceed[s] the statutory maximum."  United States v. Campbell, 764 F.3d 880, 893 (8th Cir. 2014); United States v. Villareal-Amarillas, 562 F.3d 892, 898 (8th Cir. 2009).  Here, Gerald's sentence did not exceed the statutory maximum; therefore, the court did not violate Gerald's due process rights.[8]

## B.      Neil's Appeal

Neil appeals his conviction on the grounds that the district court erred by (1) admitting evidence of his prior drug conviction; (2) admitting the recordings of the jail telephone calls; and (3) denying his motion to sever his trial from Gerald's.

### 1.      Admission of prior conviction

Neil argues that the district court erred in admitting evidence of his 2002 conviction for possession with intent to distribute cocaine.  The court admitted the evidence under Federal Rule of Evidence 404(b) on the grounds that it was relevant to Neil's state of mind—namely, his intent to enter into the conspiracy to distribute cocaine.

Rule 404(b) prohibits the admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  However, evidence of a crime, wrong, or other act "may be admissible for another purpose, such

---

[8]Gerald also contends that the court's application of sentencing enhancements violated his rights under the Fifth Amendment Double Jeopardy Clause and Sixth Amendment Confrontation Clause.  He does not explain the basis of either argument, and we conclude they are meritless.

as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "To be admissible, other crimes evidence must be (1) relevant to a material issue raised at trial, (2) similar in kind and close in time to the crime charged, (3) supported by sufficient evidence to support a jury finding the defendant committed the other act, and (4) of probative value not substantially outweighed by its prejudicial effect." United States v. Halk, 634 F.3d 482, 486–87 (8th Cir. 2011). We review the admission of evidence of other crimes for abuse of discretion. Id. at 487.

Neil first argues that the prior conviction is irrelevant to prove intent because he did not "assert a defense of mistake, or coercion, or the like that would involve the issue of intent." Rather, his defense was a general one; its thrust was that he did not commit the charged acts. Neil's argument is foreclosed by our decision in United States v. Johnson, in which we held that evidence of a prior drug conviction can be used to prove a defendant's intent to enter into a conspiracy to distribute drugs, even if the defendant has not asserted a defense that puts his state of mind at issue. 439 F.3d 947, 952 (8th Cir. 2006) (citing Old Chief v. United States, 519 U.S. 172 (1997)).

Neil next argues that the probative value of his conviction was substantially outweighed by the risk of unfair prejudice. He contends that the conviction has only limited probative value because it was not close in time or in kind to the charged offense,[9] and has slight—if any—relevance to his intent to join the conspiracy for

[9]We do not understand Neil to be challenging the admission of his prior conviction under the second prong of Halk; rather, we understand him to be arguing that the relevance of the prior conviction is diminished by its remoteness and dissimilarity to the charged offense under the fourth prong of Halk. But even if Neil had raised this argument under the second prong, we agree with the district court that the prior offense is sufficiently close in kind and time to the present offense for the reasons set forth in the court's ruling at the first pretrial conference.

which he was convicted. He argues that this probative value was outweighed by the risk that the jury would impermissibly consider the prior conviction as propensity evidence. However, because only the judgment itself was offered into evidence, and the court gave a limiting instruction, we conclude the court did not abuse its discretion in admitting evidence of Neil's prior conviction. See United States v. Smith, 789 F.3d 923, 930 (8th Cir. 2015) (any prejudice from the admission of a prior conviction did not substantially outweigh its probative value where "[t]he only evidence presented to the jury was the conviction, the date, and the drug type," and a limiting instruction was given).

## 2. Admission of telephone recordings

Like Gerald, Neil appeals the district court's admission of the recorded jail telephone calls on the grounds that the government failed to lay proper foundation for the recordings. In part, Neil repeats Gerald's argument that the government failed to meet the first four McMillan requirements. For the reasons explained above with respect to Gerald's appeal of the admission of the recordings, we disagree.

Neil additionally argues the government failed to lay adequate foundation for the recordings of the calls to which Neil was allegedly a party because Cooper did not properly identify Neil's voice on those recordings. During voir dire, Cooper testified he recognized Gerald's voice on each recording, but did not, at that time, testify that he recognized Neil's voice on any of the recordings. Later, the government introduced recordings of several telephone calls through Cooper's testimony. He identified Neil's voice on many of the recordings, but did not testify that he had previously heard Neil's voice, or otherwise explain how he knew it was Neil's. See United States v. Smith, 635 F.2d 716, 719 (8th Cir. 1980) ("The standard for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." (quoting United States v. Rizzo, 492 F.2d 443, 448 (2d Cir. 1974))).

-25-

However, even if some of the recordings were admitted without proper foundation as to the identification of Neil's voice, such error was harmless. The accuracy of a voice identification is ultimately for the jury to decide. United States v. Cerone, 830 F.2d 938, 949 (8th Cir. 1987). Here, although Cooper identified Neil's voice on several of the recordings introduced at trial, other witnesses identified Neil's voice on other recordings. Pat Brewer—who testified that he bought cocaine from Neil—identified Neil's voice on one recording. And Twila LeBeau—who is Neil's aunt and who testified about her dealings with Neil—identified Neil's voice on several other recordings. Thus, the jury had ample opportunity to determine whether Cooper correctly identified Neil's voice on the recordings even in the absence of foundational testimony as to his identifications.

### 3. Denial of motion to sever

Finally, Neil appeals the denial of his motion to sever his trial from Gerald's. "A denial of a motion to sever will not be reversed 'unless the appellant demonstrates an abuse of discretion resulting in clear prejudice.'" United States v. Dale, 614 F.3d 942, 958 (8th Cir. 2010) (quoting United States v. Flores, 362 F.3d 1030, 1039 (8th Cir. 2004)). "[S]everance should be granted 'only if there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence.'" Id. (quoting Zafiro v. United States, 506 U.S. 534, 538 (1993)).

Neil contends that the denial of his motion to sever violated his Sixth Amendment Confrontation Clause rights, because the statements Gerald made in the recorded telephone calls were used against Neil, and Neil could not cross-examine Gerald. The Confrontation Clause prohibits using "[t]estimonial statements of witnesses absent from trial" unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 59 (2004). In Crawford, the Supreme Court described

"testimony" as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact," id. at 51 (internal alteration and quotation omitted), but left "for another day any effort to spell out a comprehensive definition," id. at 68. The Supreme Court's "more recent cases have labored to flesh out what it means for a statement to be 'testimonial.'" Ohio v. Clark, 135 S. Ct. 2173, 2179 (2015). These cases establish that, at a minimum, "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." Id. at 2180. For example, statements given in the course of a police interrogation are testimonial when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution," but are non-testimonial when "the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis v. Washington, 547 U.S. 813, 822 (2006).

Here, Neil argues that the statements Gerald made during the telephone calls were testimonial because a message played at the beginning of every call informed Gerald that his calls were being recorded, and Gerald himself stated on one occasion that he knew his calls were being recorded. Thus, in Neil's view, "[i]n a very real sense, Gerald is testifying about his son by virtue of the recorded phone calls." But although Gerald was aware that law enforcement might listen to his telephone calls and use them as evidence, the primary purpose of the calls was to further the drug conspiracy, not to create a record for a criminal prosecution. See United States v. Jones, 716 F.3d 851, 856 (4th Cir. 2013) (a recorded conversation on a jail telephone was not testimonial because although the participants knew it was recorded, neither "demonstrate[d] an intent to 'bear witness' against [the defendant]"); United States v. Castro-Davis, 612 F.3d 53, 65 (1st Cir. 2010) (a co-defendant's recorded conversation with a family member on a jail telephone was not testimonial because he had no "intention of assisting in his own prosecution—in fact, quite the opposite"); see also United States v. Singh, 494 F.3d 653, 658 (8th Cir. 2007) ("[C]o-conspirators' statements made in furtherance of a conspiracy and admitted under Rule 801(d)(2)(E) are generally non-testimonial and, therefore, do not violate

-27-

the Confrontation Clause as interpreted by the Supreme Court."). Accordingly, Gerald's statements on the recordings do not implicate the Confrontation Clause, and the district court did not err in denying Neil's motion to sever.

### III. Conclusion

We affirm the judgment of the district court.

_____